# UNITED STATES DISTRICT COURT
## DISTRICT OF NEW MEXICO

JL, through her next friend, Bruce Thompson,
Esq., et al.

       Plaintiffs,

v.                                                          No. 12-CV-1145 MV/LAM

NEW MEXICO DEPARTMENT OF HEALTH,
et al.,

       Defendants.

## <u>MEMORANDUM OPINION AND ORDER</u>

**THIS MATTER** comes before the Court on the DOH Defendants'[1] Motion to Dismiss Plaintiffs' Claims Under the Medicaid Act and Supporting Memorandum ("Motion to Dismiss Medicaid Act Claims") [Doc. 215], the DOH Defendants' Motion to Dismiss Plaintiffs' Rehabilitation Act and Americans With Disabilities Act ("ADA") Claims and Supporting Memorandum ("Motion to Dismiss Rehabilitation Act and ADA Claims") [Doc. 216], the DOH Defendants' Motion to Dismiss Plaintiffs' Claims Under the Tort Claims Act ("NMTCA") and Supporting Memorandum ("Motion to Dismiss NMTCA Claims") [Doc. 217], and the DOH Defendants' Motion and Memorandum In Support of Motion to Dismiss Plaintiffs' Federal

---

[1]   In their motions to dismiss, Defendants New Mexico Department of Health ("DOH"), Los Lunas Center for Persons with Disabilities ("LLCP"), Retta Ward, Beth Schaefer, Dan Sandoval, Roger Adams, and Joseph Mateju refer to themselves as the "DOH Defendants."   The complaint, in contrast, defines "DOH Defendants" as the DOH, the LLCP, the Los Lunas Hospital and Training School, the Ft. Stanton Hospital and Training School, and Villa Solano, [Doc. 102 ¶ 22], and then separately defines the "individual DOH Defendants" as Schaefer, Sandoval, Adams, and Mateju, [*id.* ¶ 34].   This Memorandum Opinion and Order employs defendants' broad definition of "DOH Defendants," which includes both the state and individual defendants and reserves the term "Individual DOH Defendants" to refer to defendants Schaefer, Sandoval, Adams, and Mateju.

Constitutional Claims and Claims Asserted Under the New Mexico Developmental Disabilities Code on the Basis of the Statute of Limitations ("Motion to Dismiss Constitutional and Disabilities Code Claims") [Doc. 292].   The Court, having considered the motions, briefs, and relevant law, and being otherwise fully informed, finds that the Motion to Dismiss Medicaid Act Claims is granted in part and denied in part, the Motion to Dismiss Rehabilitation Act and ADA Claims is granted in part and denied in part, the Motion to Dismiss NMTCA Claims is granted in part and denied in part, and the Motion to Dismiss Constitutional and Disabilities Act Claims is denied.

## BACKGROUND

Plaintiffs JL, EH, RH, DA, KC, and GS ("Plaintiffs") assert various claims against the DOH Defendants, including, as relevant to the motions disposed of herein, claims pursuant to the Medicaid Act, the Rehabilitation Act of 1973, the Americans with Disabilities Act of 1990, and the New Mexico Tort Claims Act, as well as various constitutional claims pursuant to 42 U.S.C. Section 1983.   Plaintiffs' claims arise out of the DOH Defendants' alleged unilateral decisions (1) temporarily to transfer Plaintiffs from the Los Lunas Hospital and Training School and the Fort Stanton Hospital and Training School (collectively, the "Training School")—which at the time of the events giving rise to Plaintiffs' claims were State of New Mexico institutions operated by the DOH that housed people with developmental disabilities—to various privately-run, third-party settings, including Eastern New Mexico Mental Retardation Services ("ENMRSH"), and (2) permanently to discharge Plaintiffs from the Training School and transfer Plaintiffs to ENMRSH and/or another third-party setting.   The allegations in the complaint supporting Plaintiffs' claims are set forth more fully in the Court's Memorandum Opinion and Order dated September 30, 2015. [Doc. 375].   The Court incorporates those facts by reference instead of restating them herein.

2

**STANDARD**

Federal Rule of Civil Procedure 12(b)(6) authorizes a court to dismiss a complaint for "failure to state a claim upon which relief can be granted."   Fed. R. Civ. P. 12(b)(6).   "The nature of a Rule 12(b)(6) motion tests the sufficiency of the allegations within the four corners of the complaint after taking those allegations as true."   *Mobley v. McCormick,* 40 F.3d 337, 340 (10th Cir. 1994).   The sufficiency of a complaint is a question of law, and when considering a rule 12(b)(6) motion, a court must accept as true all well-pleaded factual allegations in the complaint, view those allegations in the light most favorable to the plaintiff, and draw all reasonable inferences in the plaintiff's favor.   *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322 (2007); *Smith v. U.S.*, 561 F.3d 1090, 1098 (10th Cir. 2009) (citation omitted), *cert. denied*, 558 U.S. 1148 (2010).

A complaint need not set forth detailed factual allegations, yet a "pleading that offers labels and conclusions or a formulaic recitation of the elements of a cause of action" is insufficient.   *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)).   "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."   *Id.*   Rather, to survive a motion to dismiss pursuant to Rule 12(b)(6), a plaintiff's complaint must contain sufficient facts which, if assumed to be true, state a claim for relief that is plausible on its face.   *See Twombly*, 550 U.S. at 570; *Mink v. Knox*, 613 F.3d 995, 1000 (10th Cir. 2010).   "A claim has facial plausibility when the pleaded factual content allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."   *Iqbal*, 556 U.S. at 678 (citing *Twombly*, 550 U.S. at 556).   "Thus, the mere metaphysical possibility that some plaintiff could prove some set of facts in support of the pleaded claims is insufficient; the complainant must give the court reason to believe that this plaintiff has a

reasonable likelihood of mustering factual support for these claims." *Ridge at Red Hawk, LLC v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007) (emphasis omitted). The Tenth Circuit has explained,

> "[P]lausibility" in this context must refer to the scope of the allegations in a complaint: if they are so general that they encompass a wide swath of conduct, much of it innocent, then the plaintiffs "have not nudged their claims across the line from conceivable to plausible." The allegations must be enough that, if assumed to be true, the plaintiff plausibly (not just speculatively) has a claim for relief.

*Robbins v. Okla.*, 519 F.3d 1242, 1247 (10th Cir. 2008) (quoting *Twombly*, 550 U.S. at 570) (internal citations omitted).

## DISCUSSION

This Memorandum Opinion and Order resolves four motions: the Motion to Dismiss Medicaid Act Claims, the Motion to Dismiss Rehabilitation Act and ADA Claims, the Motion to Dismiss NMTCA Claims, and the Motion to Dismiss Constitutional and Disabilities Code Claims.

I.      The Motion to Dismiss Medicaid Act Claims [Doc. 215].

Plaintiffs allege that the DOH, the LLCP, and the Training School violated various provisions of the Medicaid Act as well as regulations promulgated pursuant to the Medicaid Act.[2] [Doc. 102 ¶¶ 430-31]. The DOH Defendants argue in their Motion to Dismiss Medicaid Act Claims that Plaintiffs have failed to state a claim for relief because the Medicaid Act does not grant

---

[2]   The Medicaid program, established by Title XIX of the Social Security Act, 42 U.S.C. § 1396 *et seq.*, is a cooperative federal-state program created to provide medical assistance to needy families and individuals. States are not required to participate in the Medicaid program, but once a state elects to participate, it must do so in accordance with federal statutes and regulations. 42 U.S.C. § 1396a(a)(10).

Plaintiffs a private right of action against state officials in their individual capacities or a private right of action against the state itself.   [Doc. 215 at 3, 4].

A.      The Court Denies as Moot the Motion to Dismiss Medicaid Act Claims Against the Individual DOH Defendants.

The DOH Defendants first move to dismiss Plaintiffs' Medicaid Act claims against the Individual DOH Defendants on the ground that there is no private right of action against state officials in their individual capacities.   [Doc. 215 at 3 (citing *LaShonda D. v. Monroe Cty. Bd. of Educ.*, 526 U.S. 629, 640 (1999))].   Plaintiffs, however, do not assert Medicaid Act claims against the Individual DOH Defendants.   The complaint specifically alleges that Plaintiffs do not bring Medicaid Act claims against the Individual DOH Defendants and that Plaintiffs only assert their Medicaid Act claims against the DOH, the LLCP, and the Training School.   [Doc. 235 at 3; Doc. 102 ¶ 427 ("Plaintiffs explicitly . . . do not seek damages against the Individual DOH Defendants pursuant to the Medicaid Act")].   Moreover, Plaintiffs stipulate in their response to the Motion to Dismiss Medicaid Act Claims "that the Sixth Cause of Action for violations of the Medicaid Act do[es] not apply to any Individual DOH Defendants."   [Doc. 235 at 4].   Because the complaint does not assert Medicaid Act claims against the Individual DOH Defendants and because Plaintiffs have stipulated that they bring no such claims against the Individual DOH Defendants, the DOH Defendants' request that the Court dismiss Plaintiffs' Medicaid Act claims against the Individual DOH Defendants is moot.   Accordingly, the Court denies as moot the DOH Defendants' Motion to Dismiss Medical Act Claims to the extent it seeks dismissal of Medicaid Act claims against the Individual DOH Defendants.

B.   The Court Denies in Part and Grants in Part the Motion to Dismiss Medicaid Act Claims Against the DOH, the LLCP, and the Training School.

The DOH Defendants next argue that Plaintiffs' Medicaid Act claims against the DOH, the LLCP, and the Training School are subject to dismissal pursuant to Rule 12(b)(6) because the Medicaid Act does not grant Plaintiffs a private right of action against the state.   [Doc. 215 at 4]. Plaintiffs ask the Court to deny the DOH Defendants' request to dismiss Plaintiffs' Medicaid Act claims against state, arguing that, while some sections of the Medicaid Act do not create a private right of action, "numerous subsections of the Medicaid Act *do* create a private right of action." [Doc. 235 at 3, 4].

To determine whether Plaintiffs have stated a Medicaid Act claim against the DOH, the LLCP, and the Training School, the Court must assess whether the provisions of the Act allegedly violated confer a private right of action.   *See Gragert v. Lake*, 541 F. App'x 853, 855 (10th Cir. 2013) (explaining that "§ 1983 is not available to challenge every Medicaid decision," and that "its availability turns on whether, under the relevant provision of Medicaid law, 'Congress intended to confer individual rights upon a class of beneficiaries'") (quoting *Hobbs ex rel. Hobbs v. Zenderman*, 579 F.3d 1171, 1179 (10th Cir. 2009)).   The Supreme Court has explained that "the typical remedy for state noncompliance with federally imposed conditions" in legislation that is enacted pursuant to the spending power, *e.g.*, the Medicaid Act, "is not a private cause of action for noncompliance but rather action by the Federal Government to terminate funds to the State." *Pennhurst State Sch. & Hosp. v. Halderman*, 451 U.S. 1, 28 (1981).   Nonetheless, in some circumstances, legislation enacted pursuant to the spending power can create rights privately enforceable against state officers through Section 1983, *see, e.g.*, *Wright v. Roanoke Redevel. & Hous. Auth.*, 479 U.S. 418 (1987); *Wilder v. Virginia Hosp. Ass'n*, 496 U.S. 498 (1990), and

6

certain subsections of the Medicaid Act fall within these limited circumstances and therefore create private rights of action against the states.

The Supreme Court has established the framework for determining whether federal legislation creates a private right of action enforceable through 42 U.S.C. Section 1983.[3]   To seek redress through § 1983, the Supreme Court has held that a plaintiff must assert a violation of a federal *right*, not merely a violation of federal law.  *Blessing v. Freestone*, 520 U.S. 329, 340 (1997).   In *Blessing v. Freestone*, the Court set forth three criteria to determine whether a statutory provision gives rise to a federal right:

> First, Congress must have intended that the provision in question benefit the plaintiff.  Second, the plaintiff must demonstrate that the right assertedly protected by the statute is not so "vague and amorphous" that its enforcement would strain judicial competence.  Third, the statute must unambiguously impose a binding obligation on the States.  In other words, the provision giving rise to the asserted right must be couched in mandatory, rather than precatory, terms.

*Blessing*, 520 U.S. at 340-41 (citations omitted), *quoted in Mandy R. v. Owens*, 464 F.3d 1139, 1146-47 (10th Cir. 2006), *cert. denied*, 549 U.S. 1305 (2007).   In *Gonzaga Univ. v. Doe*, 536 U.S. 273 (2002), the Supreme Court tightened the first requirement, holding that an enforceable private right exists only if the statute contains nothing "short of an unambiguously conferred right" and not merely a vague benefit or interest.   *Id.* at 283.   The Court held that no enforceable right exists "where a statute by its terms grants no private rights to any identifiable class."   *Id.* at 283-84.[4]

---

[3]   "Section 1983 imposes liability on anyone who, under color of state law, deprives a person 'of any rights, privileges, or immunities secured by the Constitution and laws.'"   *Mandy R. v. Owens*, 464 F.3d 1139, 1146 (10th Cir. 2006).

[4]   Specifically, the *Gonzaga* Court stated that the language used in some of the Supreme Court's prior opinions could be read to suggest that a plaintiff can enforce a statute under Section 1983, "so long as the plaintiff falls within the general zone of interest that the statute is intended to protect."

The Court explained that a statute unambiguously demonstrates congressional intent to confer individual or personal rights by using "rights-creating language." *Gonzaga*, 536 U.S. at 287. Such language must clearly impart an "individual entitlement," and have an "unmistakable focus on the benefited class." *Id*. at 284. "Once a plaintiff demonstrates that a statute creates a federal right, the right is presumptively enforceable under § 1983 unless Congress specifically foreclosed such a remedy." *Mandy R.*, 464 F.3d at 1147 (citing *Gonzaga*, 536 U.S. at 284).

Post-*Gonzaga* decisions reach mixed results on whether various provisions of the Medicaid Act create rights enforceable under Section 1983. *Compare Sabree v. Richman*, 367 F.3d 180, 192 (3rd Cir. 2004) (holding that 42 U.S.C. Section 1396a(a)(8) creates a private right of action) *and Pediatric Specialty Care, Inc. v. Ark. Dep't of Human Servs.*, 364 F.3d 925, 930 (8th Cir. 2004) (holding that providers have enforceable private right of action under 42 U.S.C. Section 1396a(a)(30)(A)) *with Sanders v. Kan. Dep't. of Soc. & Rehab. Servs.*, 317 F. Supp. 2d 1233 (D. Kan. 2004) (holding that 42 U.S.C. Section 1396a(a)(8) does not create a private right of action) *and Long Term Care Pharmacy Alliance v. Ferguson*, 362 F.3d 50, 58-59 (1st Cir. 2004) (holding that providers do not have enforceable rights under 42 U.S.C. Section 1396a(a)(30)(A)).

Plaintiffs bring claims against the DOH, the LLCP, and the Training School for alleged violations of subsections 1396a(a)(8), 1396a(a)(3), 1396a(31), and 1396a(a)(44) of the Medicaid

---

536 U.S. at 287.   The *Gonzaga* Court clarified this potential misunderstanding, stating that "it is rights, not the broader or vaguer 'benefits' or 'interests,' that may be enforced under the authority of [§ 1983]." *Id*.   Thus, under *Gonzaga*, a plaintiff may bring suit under Section 1983 as an intended beneficiary of a statute only if the statute unambiguously demonstrates congressional intent to confer an individual or personal right on that plaintiff.   *Id*.   *Gonzaga* did not change the overall framework for discerning rights enforceable under Section 1983 but "merely refined the first part of the three-part test, providing guidance to courts in determining whether a plaintiff is an intended beneficiary of a statute."   *Sanchez v. Johnson*, 301 F.Supp.2d 1060, 1062 (N.D. Cal. 2004), *aff'd*, 416 F.3d 1051 (9th Cir. 2005).

Act and for alleged violations of various regulations promulgated pursuant to the Medicaid Act. The Court evaluates the provisions of the Medicaid Act and its regulations upon which Plaintiffs rely in turn to determine whether they create a private right of action.

       1.       <u>Subsections 1396a(a)(8) and 1396a(a)(3) Create a Private Right of Action</u>.

The complaint alleges that the DOH, the LLCP, and the Training School violated the Medicaid Act by "[f]ailing to ensure that Plaintiffs received needed medical assistance with reasonable promptness, in violation of 42 U.S.C. § 1396a[(a)](8)," [Doc. 102 ¶ 430b], and by "[f]ailing to provide Plaintiffs with an opportunity for a fair hearing before the State Medicaid agency when placing them outside of the Training School into aftercare, and when discharging them from the Training School, in violation of 42 U.S.C. § 1396a[(a)](3)."   [Doc. 102 ¶ 430a].

Subsection 1396a(a)(8) of the Medicaid Act provides that "[a] State plan for medical assistance must" "provide that all individuals wishing to make application for medical assistance under the plan shall have opportunity to do so, and that such assistance shall be furnished with reasonable promptness to all eligible individuals."   42 U.S.C. § 1396a(a)(8).   Subsection 1396a(a)(3) provides that "[a] State plan for medical assistance must" "provide for granting an opportunity for a fair hearing before the State agency to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness."   42 U.S.C. § 1396a(a)(3).   These statutory provisions are clear and unambiguous.   They provide that all individuals must be permitted to apply for medical assistance; such assistance must be furnished with reasonable promptness to all eligible individuals; and the state must provide an opportunity for a fair hearing to any individual whose claim for medical assistance under the plan is denied or is not acted upon with reasonable promptness.   Indisputably, these provisions create law that is binding on those states that choose to accept Medicaid funding.

Moreover, Subsections 1396a(a)(8) and (3) satisfy the *Blessing* test because (1) Plaintiffs are the intended beneficiaries; (2) the rights Plaintiffs seek to enforce are specific and enumerated, not "vague and amorphous;" and (3) the obligation imposed on the states is unambiguous and binding.   The subsections also satisfy the *Gonzaga* test because Congress *unambiguously* conferred the rights asserted by using "rights-creating terms."   *Gonzaga*, 536 U.S. at 284.

In *Valdez v. New Mexico Human Servs. Dep't*, No. 05-451 MV/ACT (D.N.M. Mar. 14, 2006) (Doc. 104), this Court previously applied *Gonzaga* and determined that Congress, in enacting subsections 1396a(a)(3) and (a)(8), unambiguously conferred rights using "rights-creating terms."   The *Valdez* Court explained that, "[p]rior to *Gonzaga*, several cases held that section § 1396a(a)(8), known in the case law as the 'reasonable promptness' provision, created federal rights enforceable under § 1983."   *Id.*, Doc. 104 at 9 (citing *Westside Mothers v. Haveman*, 289 F.3d 852, 864 (6th Cir. 2002); *Doe v. Chiles*, 136 F.3d 709, 719 (11th Cir. 1998)). The Court indicated, however, that "[s]ubsequent to *Gonzaga*, . . . courts have split over whether the 'reasonable promptness' provision creates a private right of action.   *Compare id.* (explaining that some courts continue to hold that the 'reasonable promptness' provision creates a private right of action) (citing *Sabree*, 367 F.3d at 192; *Bryson v. Shumway*, 308 F.3d 79, 88 (1st Cir. 2002)), *with id.* (noting that "[o]ther courts have held that the provision does not create a private right of action") (citing *Sanders*, 317 F. Supp. 2d at 1250; *M.A.C. v. Betit*, 284 F. Supp. 2d 1298, 1307 (D. Utah 2003)).   The *Valdez* Court concluded that it was "persuaded by the rationale set forth in [decisions concluding] that § 1396a(a)(8) does create a private right of action," and reasoned that subsection 1396a(a)(8) "contains the 'rights-creating' language described in *Gonzaga*."   *Id.*   In support of this conclusion, the Court noted that 1396a(a)(8) "is 'phrased in terms of the persons benefited,'" *id.* (quoting *Gonzaga*, 536 U.S. at 284), it "includes the term 'shall'—a term which the

10

*Gonzaga* court emphasized is 'the sort of explicit right—or duty-creating language' necessary 'to impute to Congress an intent to create a private right of action,'" *id.* (quoting *Gonzaga*, 536 U.S. at 284 n. 3), and it "also references 'all eligible individuals' as those to whom medical assistance must be provided," *id.*   *Valdez* then held that, "[b]ased on this language, [the] Plaintiff ha[d] an enforceable right of action under 42 U.S.C. § 1396a(a)(8)," *id.* at 9-10, and that, because the language of Section 1396a(a)(3) is "virtually indistinguishable" from that of subsection 1396a(a)(8)," the Plaintiff also had an enforceable right under subsection (3).   *Id.*

The DOH Defendants argue that even if the Court in *Valdez* held that subsections 1396a(a)(8) and (3) create private rights of action, there is no *controlling* precedent that holds that a private right of action exists under the more rigid *Gonzaga* standard.   [Doc. 250 at 3].   While no controlling precedent may exist, the Court nonetheless is persuaded that, for the same reasons stated in *Valdez*, subsections 1396a(a)(8) and (3) create privately enforceable rights.   Subsection 1396a(a)(8) contains *Gonzaga's* required "rights-creating" language because it is phrased in terms of the persons benefited as required by *Gonzaga*, it utilizes the term "shall" (which, as the *Gonzaga* Court noted, suggests "the sort of explicit right—or duty-creating language" necessary "to impute to Congress an intent to create a private right of action," 536 U.S. at 284 n.3), and it grants medical assistance to "all eligible individuals."   For these reasons, the Court concludes that subsection 1396a(a)(8) contains the sort of rights-creating language contemplated by *Gonzaga.* The Court further concludes that because the language of Section 1396a(a)(3) is virtually the same, subsection (3) also contains *Gonzaga's* rights-creating language.

The Court's conclusion is supported by persuasive authority.   In *Valdez*, the Court specifically relied upon post-*Gonzaga* decisions from the First and the Third Circuits holding that subsection 1396a(a)(8) creates a private right of action.   *See Sabree*, 367 F.3d at 192; *Bryson*, 308

11

F.3d at 88.   Since the Court's decision in *Valdez*, the Fourth and the Sixth Circuits have joined the

First and the Third Circuits in holding that subsection 1396a(a)(8) creates a private right of action.

*See Doe v. Kidd*, 419 F. App'x 411 (4th Cir. Mar. 24, 2011); *Westside Mothers v. Olszewski*, 454

F.3d 532 (6th Cir. 2006).[5]   Similarly, the Second and Sixth Circuits have held post-*Gonzaga* that

subsection 1396a(a)(3) creates a private right of action, as have several district courts.   *See*

*Shakhnes v. Berlin*, 689 F.3d 244 (2d Cir. 2012); *Gean v. Hattaway*, 330 F.3d 758 (6th Cir. 2003);

*Fishman v. Daines*, 743 F. Supp. 2d 127 (E.D.N.Y. 2010); *McCartney v. Cansler*, 608 F. Supp. 2d

694 (E.D.N.C. 2009), *aff'd*, 382 F. App'x 334 (4th Cir. 2010).   These decisions, in conjunction

with the express language of subsections 1396a(a)(8) and (3), compel the Court to conclude that

Plaintiffs have enforceable rights of action under 42 U.S.C. § 1396a(a)(8) and (3).

        In their memorandum in reply, Defendants advance the alternative argument that, even if

subsections 1396a(3) and 1396a(8) create private rights of action, Plaintiffs have not stated a claim

for relief under these subsections because the complaint does not allege that the DOH Defendants

failed to provide Plaintiffs with "medical assistance" as that term is defined in the act.   [Doc. 250

at 2, 4].   Subsections 1396a(a)(3) and (a)(8) both require state plans for medical assistance to

grant individuals applying for "medical assistance" or wishing to challenge a denial of "medical

assistance" certain rights, 42 U.S.C. §§ 1396a(a)(3), (8), and Section 1396d(a) defines "medical

assistance" as "payment of part or all of the cost of the [described] care and services."   42 U.S.C.

§ 1396d(a); *see also Mandy R.*, 464 F.3d at 1143.   The DOH Defendants argue that the "statutory

definition mentions payment for, but not provision of, services, so that the term 'assistance' refers

to financial assistance rather than to actual medical services," [Doc. 250 at 3 (citing *Mandy R.*, 464

---

[5]   The Eleventh Circuit also has held that, albeit pre-*Gonzaga*, subsection 1396a(a)(8) creates a
private right of action.   *See Doe v. Chiles*, 136 F.3d 709 (11th Cir. 1998).

F.3d at 1143)], and that "[t]he First Amended Complaint alleges no claim by any of the Plaintiffs for medical assistance that was denied or not acted upon," but rather alleges that the violation of Section 1396(a)(3) occurred when the DOH Defendants denied Plaintiffs services by discharging them from the Training School and placing them at ENRMSH, [*id.* at 2 (citing Doc. 102 ¶ 430(a)); *id.* at 3 (quoting *Mandy R.*, 464 F.3d at 1143) (explaining that, "'[o]n its face, . . . the Medicaid Act requires any state participating in Medicaid to pay promptly and evenhandedly for medical services when the state is presented with the bill'")].   The DOH Defendants reason that because the complaint does not allege that the DOH Defendants failed to pay for services or otherwise provide financial assistance, Plaintiffs have failed to state a claim for relief under subsections 1369a(8) or (3).   [*Id.* at 3].

The Court declines to consider this argument because the DOH Defendants raise it for the first time in their reply.   The sole argument the DOH Defendants raise in their opening memorandum is that the Medicaid Act's provisions upon which Plaintiffs rely do not create a private right of action.   Plaintiffs thus, in their opposition, respond only to the DOH Defendants' contention that the subsections allegedly violated do not create a private right of action.   The DOH Defendants therefore failed to place Plaintiffs on notice that they were moving for dismissal on the ground that Plaintiffs' allegations do not fall within the Act's definition of "medical assistance."   Because entertaining an argument that the DOH Defendants raised for the first time in their reply would prejudice Plaintiffs, the Court declines to consider the argument.

2.     Subsection 1396a(31) Does Not Create a Private Right of Action.

The complaint alleges that the DOH, the LLCP, and the Training School violated the Medicaid Act by "[f]ailing to ensure that Plaintiffs received from the Training School a written plan of care in accordance with regulations of the Secretary, and a regular program of independent

professional review (including medical evaluation) that periodically reviewed Plaintiffs' need for services, in violation of 42 U.S.C. § 1396a(31)." [Doc. 102 ¶ 430c]. In their opening memorandum, the DOH Defendants argue that subsection 1396a(a)(31) does not create a private right of action. In opposition to the motion, Plaintiffs disagree, arguing that "Subsection 1396a(31) was recently held to create a private right of action in *Thrower v. Comm[onwealth]*, No. 3:10-cv-222, 2012 WL 1970867 (W.D. Penn. May 31, 2012)." [Doc. 235 at 7 (citing *Martin v. Voinovich*, 840 F. Supp. 1175 (S.D. Ohio 1993))].

Subsection 1396a(a)(31) provides that

> [a] State plan for medical assistance must . . . with respect to services in an intermediate care facility for the mentally retarded (where the State plan includes medical assistance for such services) provide, with respect to each patient receiving such services, for a written plan of care, prior to admission to or authorization of benefits in such facility, in accordance with regulations of the Secretary, and for a regular program of independent professional review (including medical evaluation) which shall periodically review his need for such services.

42 U.S.C. § 1396a(a)(31). The DOH Defendants argue that "[t]his language speaks to the practices and standards of the facility and, by its terms, does not appear even to require that the plan or program be provided to the patient, as the Plaintiffs claim." [Doc. 250 at 4]. The DOH Defendants further argue that "[n]o New Mexico state or federal court has decided that subsection (31) provides a private right of action." [*Id.*].

Although in *Thrower v. Commonwealth*, the Western District of Pennsylvania concluded "'without difficulty' that the provisions at issue in th[e] case create individually enforceable rights," 2012 WL 1970867, at *4, this Court is not similarly persuaded. In holding that subsection 1396a(a)(31) creates a private right of enforcement, the *Thrower* court reasoned that "[f]irst, the patients/clients are clearly the intended beneficiaries of these provisions which declare their rights

14

and provide detailed descriptions of what facilities must do to ensure those rights"; "[s]econd, the provisions are not vague or amorphous; to the contrary, they unequivocally define the rights of patients and the obligations of facilities"; and "[t]hird, these provisions unambiguously impose binding obligations on these state-run facilities, speaking clearly in terms of what the facilities 'must' do." *Id.*  The court therefore concluded that subsection (31) "unmistakably confer[s] substantive treatment rights on patients in rights-creating terms." *Id.*

While the Court agrees with the *Thrower* court's third point—*i.e.*, that the subsection's provisions impose binding obligation on the facilities—the Court does not agree with its first and second points—*i.e.*, that the patients/clients are clearly the intended beneficiaries of the provision and that the provision unequivocally defines the rights of the patients/clients.  Thus, unlike the *Thrower* court, this Court declines to hold that subsection 1396a(a)(31) unmistakably confers rights on patients/clients using rights-creating language.

Subsection 1396a(a)(44) confers no rights on the patients/clients of the facilities and its language, therefore, does not satisfy the *Blessing/Gonzaga* standard.  The Supreme Court in *Gonzaga* held that an enforceable private right exists only if the statute contains nothing short of "an unambiguously conferred right," 536 U.S. at 283, and that no enforceable right exists "where a statute by its terms grants no private rights to any identifiable class," *id.* at 283-84.  The Court further opined that the statute must be phrased in terms of the persons benefited.  *Id.* at 284.  A plain reading of the language of subsection (31) reveals that this subsection does not utilize language identifying facility clients as the beneficiaries of the obligations imposed by the subsection on facilities, and that subsection (31) does not confer any substantive rights on patients in rights-creating terms.  Indeed, the subsection's plain language does not grant any rights

15

whatsoever—not even vague or amorphous rights—to clients of facilities.[6]  This Court therefore is not persuaded, as was the court in *Thrower*, that the intended beneficiaries of subsection (31) are the clients of the facilities, that subsection (31) unequivocally defines the rights—or indeed any rights—of clients, or that it unmistakably confers substantive treatment rights on patients in rights-creating terms that impart a clear individual entitlement and have an unmistakable focus on the benefitted class.   Accordingly, the Court holds that subsection (31) does not create a private right of action, and therefore that Plaintiffs cannot sustain a claim against the state for violation of 42 U.S.C. § 1396a(a)(31).   Thus, the Court grants the DOH Defendants' motion to dismiss Plaintiffs' claim arising under § 1396a(a)(31).[7]

3.   Subsection 1396a(a)(44) Does Not Create a Private Right of Action.

The complaint alleges that the DOH, the LLCP, and the Training School violated the Medicaid Act by "[f]ailing to ensure that Plaintiffs' services were furnished under a plan established and periodically reviewed and evaluated by a physician or a nurse practitioner or

[6]   The court in *Thrower* relied upon an altered excerpt from subsection 1396a(a)(31) to support its decision, quoting subsection (31) as providing that "a participating state 'must—with respect to services in an intermediate care facility for the mentally retarded [,] . . . *provide . . . each patient . . . . [with] a written plan of care*." *Thrower*, 2012 WL 1970867, at *6 (emphasis added).   While this altered language suggests that subsection (31) *requires* facilities to provide the mandated plans to the facilities' clients, the actual language of that subsection makes clear that it contains no requirement that facilities provide the plans to their clients.   The unedited statute provides only that a participating state "must provide, *with respect to* each patient receiving such services, *for a* written plan of care" and program of review," 42 U.S.C. § 1396a(a)(31) (emphasis added).   This language does not require facilities to provide patients with plans of care.

[7]   The Court's holding that subsection (31) does not confer a private right of action on Plaintiffs is dispositive.   Accordingly, the Court need not—and therefore does not—consider the DOH Defendants' argument in the alternative that subsection (31) is inapplicable because Plaintiffs allege that the abuse, neglect, and exploitation occurred during their time at ENMRSH, and not while they were at the Training School, and because the State of New Mexico does not operate ENMRSH.   [Doc. 250 at 5].   The Court notes, however, that even if its holding were not dispositive, it nonetheless would not consider the DOH Defendants' argument in the alternative because the DOH Defendants raised the argument for the first time in the reply and Plaintiffs therefore have not had the opportunity to respond.

clinical nurse specialist who is not an employee of the Training School but is working in collaboration with a physician, in violation of 42 U.S.C. § 1396a(44)."   [Doc. 102 ¶ 430d].

Subsection 1396a(a)(44) provides that

> A State plan for medical assistance must . . . (44) in each case for which payment for inpatient hospital services, services in an intermediate care facility for the mentally retarded, or inpatient mental hospital services is made under the State plan . . . (A) a physician (or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician) certifies at the time of admission, or, if later, the time the individual applies for medical assistance under the State plan . . . that such services are or were required to be given on an inpatient basis because the individual needs or needed such services, and (B) such services were furnished under a plan established and periodically reviewed and evaluated by a physician, or, in the case of skilled nursing facility services or intermediate care facility services, a physician, or a nurse practitioner or clinical nurse specialist who is not an employee of the facility but is working in collaboration with a physician.

42 U.S.C. § 1396a(a)(44).

The DOH Defendants maintain that subsection (44) contains no "unambiguously conferred right" that must be "phrased in terms of the person benefitted," as required by *Gonzaga*. Plaintiffs, in contrast, contend that, "[a]lthough Plaintiffs' counsel did not locate a case that specifically addresses subsection 1396a[(a)](44)," that "subsection shares many characteristics in common with subsection 1396a[(a)](31), which does create a private right of action," and "[a]dditionally, numerous courts have enforced similar Medicaid Act provisions regarding intermediate care facilities and ICF/MR facilities."   [Doc. 235 at 8 (quoting *Rolland v. Patrick*, 483 F. Supp. 2d 107 (D. Mass. 2007); *D.M. v. Butler Cty. Bd. of Mental Retardation & Dev. Disabilities*, No. 08-399, 2008 WL 4916306 (S.D. Ohio Nov. 13, 2008))].

The Court is not persuaded that the language in subsection (44) satisfies the *Blessing*/*Gonzaga* standard. To contain the "rights-creating language" required by *Gonzaga*, the statute must clearly impart an "unambiguously conferred right" and "individual entitlement" and have an "unmistakable focus" on an "identifiable" "benefited class." 536 U.S. at 283-84. Subsection (44) does not clearly impart an unambiguously conferred right or individual entitlement to any identifiable class of persons benefitted by the statute. Nowhere in subsection (44) does Congress grant those receiving medical assistance the right to obtain the required certification. Nor is it clear why those receiving medical assistance would benefit from receiving the certification. Thus, subsection (44) does not have an "unmistakable focus" on an identifiable benefitted class of persons. Rather, subsection (44) appears only to require the certification as part of the facilities' general record-keeping practices and standards. If the certification has a benefit, it is to the federal agency overseeing the state facilities and not to any class of persons receiving benefits under the statute. The Court therefore concludes that, because subsection (44) contains no rights-creating language, subsection (44) does not create a private right of action. Accordingly, the Court grants the DOH Defendants' motion to dismiss Plaintiffs' Medicaid Act claims premised upon a violation of subsection 1396a(a)(44).[8]

---

[8] Because the Court grants the motion to dismiss on the dispositive ground that subsection (44) does not confer a private right of action, the Court need not consider the DOH Defendants' alternative argument that Plaintiffs have failed to state a Medicaid Act claim pursuant to subsection (44) because Plaintiffs were residing at ENMRSH (and not a DOH facility) and because the DOH "was not obligated to meet the requirements of subsection (44) and should not be held liable for ENMRSH's alleged failures to do so." [Doc 250 at 7]. Even if, however, the Court's decision were not dispositive, the Court nonetheless would decline to consider the DOH Defendants' alternative argument because Defendants raise it for the first time in their reply and Plaintiffs have not had an opportunity to respond.

4.      <u>The Court Denies the Motion to Dismiss Plaintiffs' Claims for Violation of Regulations Promulgated Pursuant to the Medicaid Act.</u>

The complaint alleges that the DOH, the LLCP, and the Training School violated the Medicaid Act by (1) "[f]ailing to ensure that, at the time of Plaintiffs' placement outside the Training School on aftercare and at the time of their discharge from the Training School, each Plaintiff received (i) a final summary of their . . . status . . . ; and (ii) were provided a post-discharge plan of care to assist them to adjust to the new living environment, in violation of 42 CFR 483.440," [Doc. 102 ¶ 430e]; (2) "[f]ailing to respect each Plaintiff's right to make choices about their lives, in violation of 42 CFR 483.15," [Doc. 102 ¶ 430f]; (3) "[f]ailing to ensure that outside agencies that provided services to Plaintiffs while committed to the Training School, such as ENMRSH, had a written agreement with the Training School that required the outside agency to provide all necessary medical care and to meet all of the client's needs, in violation of 42 CFR 483.410," [Doc. 102 ¶430g]; (4) "[f]ailing to afford Plaintiffs all required client protections," including (a) "allowing them to manage their financial affairs and teaching them to do so"; (b) "ensuring that when they performed work for the facility that they were compensated"; (c) "maintaining a system that assures a full and complete accounting of clients' personal funds entrusted to the facility"; and (d) "communicating with clients, parents, guardians, advocates and friends," [Doc. 102 ¶ 430h]; and (5) "fail[ing] to comply with applicable regulations regarding discharge planning, 42 CFR 483.440, which required the Training School to provide Plaintiffs and their provider agency:   a. A final summary of the client's . . . status, b. A post-discharge plan . . . , c. Documentation that the discharge was for good cause, and d. Preparations for the transfer and discharge."   [Doc. 102 ¶ 431].

In their opening memorandum, the DOH Defendants argue that Plaintiffs "cannot maintain

an action against the state under the Medicaid Act," citing the Tenth Circuit's decisions in *Mandy R.*, 464 F.3d at 1148, and *Hobbs*, 579 F.3d at 1182.   [Doc. 215 at 4].   Neither of these decisions stands for the proposition that a private right of enforcement against the state does not exist under the Medicaid Act.   Rather, as the Court already has explained, certain provisions of the Medicaid Act can create rights privately enforceable against state officers through Section 1983 if they satisfy the *Blessing*/*Gonzaga* test.   Moreover, neither of the decisions holds that the regulations upon which Plaintiffs rely do not contain a private right of enforcement.   Furthermore, although Plaintiffs in their response memorandum specifically argue that "[m]any courts have enforced provisions of 42 C.F.R. Section 483, as well as other regulations arising under subsections of Medicaid Act provisions which apply to intermediate care facilities, including ICF/MR facilities such as the Training School," [Doc. 235 at 9 (citing cases)], the DOH Defendants' reply contains no argument or case authority in support of their position that the regulations do not create a private right of action.   Local Rule 7.1(a) provides that a movant must "state with particularity the grounds and the relief sought," D.N.M.LR-Civ. 7.1(a), and Local Rule 7.3(a) requires movants to "cite authority in support of the legal positions advanced."   D.N.M.LR-Civ. 7.3(a).   Because, in violation of this Court's rules, the DOH Defendants' memorandum contains no argument or case authority relevant to the question whether the regulations allegedly violated confer a private right of enforcement, the Court denies the DOH Defendants' motion to dismiss Plaintiffs' claims premised upon violation of the Medicaid Act's regulations.[9]

_____

[9]   The DOH Defendants argue in the alternative that the regulations upon which Plaintiffs rely to state a Medicaid Act violation are inapplicable because they were not promulgated until after the alleged violations occurred or because the regulations impose obligations only upon a facility that houses the patients in question—*i.e.*, here, ENMRSH.   The DOH Defendants, however, did not raise these arguments in their opening memorandum but rather advance them for the first time in their reply.   The Court declines to consider defendants' arguments because Plaintiffs have not had

II.     The Motion to Dismiss Rehabilitation Act and ADA Claims [Doc. 216].

The DOH Defendants move to dismiss Plaintiffs' ADA and Rehabilitation Act claims pursuant to Federal Rule of Civil Procedure 12(b)(6) on several grounds.  First, the DOH Defendants argue that Plaintiffs cannot state an ADA or Rehabilitation Act claim against the Individual DOH Defendants because the proper defendant in an ADA or Rehabilitation Act suit is the entity receiving federal funds and not its employees.  [Doc. 216 at 3, 5].  Second, the DOH Defendants argue that Plaintiffs cannot state an ADA claim against the state premised upon Plaintiffs' discharges from the Training School and their transfers to ENMRSH or other third-party settings because these discharges and transfers occurred prior to the ADA's enactment, [*id.* at 4], and that Plaintiffs cannot state an ADA claim premised upon conduct unrelated to their discharges from the Training School and transfers to third-party settings because this conduct did not occur while Plaintiffs were in the custody of the DOH Defendants, [*id.* at 4-5].  Third, the DOH Defendants argue that Plaintiffs cannot state a Rehabilitation Act claim against the state because Plaintiffs challenge the treatment and services they received while under the care of a private, third-party facility, *i.e.*, ENMRSH, and Plaintiffs cannot support a discrimination or failure to provide services claim against the DOH Defendants arising out of conduct that occurred while Plaintiffs were housed at a third-party facility, [*id*. at 4], and because Plaintiffs have failed to allege that the DOH Defendants either refused to provide a requested accommodation or discriminated against Plaintiffs by reason of their handicaps.

---

the opportunity to respond.

A.    The Court Denies as Moot the Motion to Dismiss Rehabilitation Act and ADA Claims Against the Individual DOH Defendants.

The DOH Defendants first move to dismiss Plaintiffs' Rehabilitation Act and ADA claims against the Individual DOH Defendants on the ground that there is no private right of action against state officials in their individual capacities.   [Doc. 216 at 3, 5].   The complaint, however, does not allege Rehabilitation Act or ADA claims against the Individual DOH Defendants but rather asserts these claims only against the DOH, the LLCP, and the Training School.   [Doc. 102 ¶¶ 404-06, 408-11; Doc. 236 at 3].   Moreover, Plaintiffs specifically stipulate in their opposition to the motion to dismiss that they do not bring Rehabilitation Act and ADA claims against the Individual DOH Defendants.   [Doc. 236 at 4].   Accordingly, because the complaint does not assert Rehabilitation Act or ADA claims against the Individual DOH Defendants and because Plaintiffs have stipulated that they bring no such claims against the Individual DOH Defendants, the DOH Defendants' motion to dismiss Plaintiffs' Rehabilitation Act and ADA claims is moot and the Court therefore denies as moot the motion to dismiss these claims.

B.    The Court Grants the Motion to Dismiss ADA Claims Against the DOH, the LLCP, and the Training School.

The DOH Defendants move to dismiss Plaintiffs' ADA claims on the grounds that (1) Plaintiffs cannot state an ADA claim against the state premised upon Plaintiffs' discharges from the Training School and their transfers to ENMRSH because these discharges and transfers occurred prior to the ADA's enactment, and (2) Plaintiffs cannot state an ADA claim premised upon conduct unrelated to their discharges from the Training School and transfers to third-party settings because this conduct did not occur while Plaintiffs were in the custody of the DOH Defendants.

1.      Plaintiffs Have Not Stated an ADA Claim Because the Alleged Conduct
         Occurred Prior to the Act's Effective Date.

Defendants move to dismiss Plaintiffs' ADA claims to the extent the claims arise out of

Plaintiffs' discharges from the Training School and their pre- and post-discharge placements at

ENMRSH, arguing that the alleged discharges and transfers occurred prior to 1981, which was

more than eleven years before the ADA's effective date, and that the conduct therefore is not

actionable.   [Doc. 216 at 4].   Plaintiffs, in contrast, object to the DOH Defendants'

characterization of their ADA claims as arising out of conduct that occurred prior to 1981 and

instead contend that the complaint contains multiple allegations establishing that the DOH

Defendants engaged in proscribed conduct after the ADA became effective.   [Doc. 236 at 8].

In support of their ADA claims, Plaintiffs rely upon the complaint's allegations that the

DOH Defendants violated Title II of the ADA when they denied Plaintiffs the opportunity to

participate in state programs and denied Plaintiffs services as effective as those the state provided

to non-disabled persons, [Doc. 102 ¶ 408(a) (alleging that the DOH Defendants violated the ADA

by "[d]enying Plaintiffs the opportunity to participate in or benefit from the programs and services

of state government"); *id*. ¶ 408(b) (alleging that the DOH Defendants violated the ADA by

"[d]enying Plaintiffs aid, benefits and services that are as effective as those provided to

non-disabled persons or persons with other disabilities who are able to effectively advocate for

themselves")].   Plaintiffs also rely upon the complaint's allegations that defendants discriminated

against Plaintiffs in the operation of the Training School and in the provision of protective services

in violation of Title II of the ADA.   [*Id.* ¶ 408(e) (alleging that the DOH Defendants violated the

ADA by "discriminating against Plaintiffs in the operation of the Training School, the

community-based developmental disability system, and the State's protective services due to

Plaintiffs' disabilities . . . because DOH Defendants knew that, due to their developmental disabilities, Plaintiffs could not effectively object to their placement or to the exploitation and neglect therein," and "den[ying] Plaintiffs the education, habilitation, behavioral services, medical, dental and mental health care and other supports and services they needed because they knew that, due to their developmental disabilities, Plaintiffs could not effectively object")].   The Court holds that these allegations do not state an ADA claim because they are premised upon conduct that occurred prior to the ADA's January 26, 1992, effective date.

More specifically, while Plaintiffs allege that the DOH Defendants violated the ADA by denying Plaintiffs the opportunity to participate in Training School programs and by denying Plaintiffs services as effective as those provided to other non-disabled persons or to persons with different disabilities, this alleged conduct occurred prior to 1981—*i.e.*, when the DOH Defendants discharged Plaintiffs from the Training School and/or transferred them to ENMRSH.   Similarly, while the complaint alleges that the DOH Defendants engaged in the discriminatory acts of removing Plaintiffs from the Training School and placing them at ENMRSH, [*id.* ¶ 408(e)], these discharges and transfers occurred prior to 1981.[10]   Because Plaintiffs' discharges from the Training School and pre- or post-discharge transfers to ENMRSH occurred more than eleven years prior to the date on which the ADA became effective, Plaintiffs have not stated an ADA claim.

The Court is not persuaded to hold otherwise by Plaintiffs' contention that, on the facts alleged, Defendants currently are violating the ADA because Plaintiffs are wards of the state.

---

[10]   To the extent Plaintiffs, to state an ADA claim, also rely upon the complaint's allegation that Defendants failed to provide Plaintiffs with care in the most integrated setting, [Doc. 102 ¶ 408(c) (alleging that the DOH Defendants violated the ADA by "[f]ailing to provide state programs, activities and services to Plaintiffs in the most integrated setting appropriate to their needs")], this allegation, like the other allegations, involves conduct that occurred prior to the 1981.   It was only while Plaintiffs were in the DOH Defendants' care that defendants could have committed the omissions of failing to provide care in the most integrated setting.

Plaintiffs argue that the complaint repeatedly alleges that Plaintiffs are, and have been since the time of their initial involuntary commitments to the Training School, in the legal custody of the state, [Doc. 236 at 4-6 (arguing that the DOH Defendants did not "legally and effectively discharge[]" Plaintiffs from the Training School and citing multiple paragraphs of the complaint alleging that Plaintiffs were never legally and/or judicially discharged from state custody and that Plaintiffs therefore remain in state custody to this day)], and maintain that, on a motion to dismiss, the Court must accept the complaint's allegations of continuous state custody as true, [*id.* at 6 (conceding that the DOH Defendants "may, and do," dispute Plaintiffs' allegations that they remain in state custody, but asserting that "that dispute is not properly the subject of the instant Motion to Dismiss, but rather requires the offering of evidence by the parties in support of their respective positions")].   Plaintiffs then extrapolate that, as a result of Plaintiffs' status as wards of the state, the DOH Defendants presently are violating the ADA because the state has a current legal obligation to care for Plaintiffs and is depriving Plaintiffs of the state's direct services.

While the Court accepts well-pleaded factual allegations as true on a motion to dismiss, Plaintiffs' allegations of continuous state custody are legal conclusions, and the Court does not accept legal conclusions as true   *Southern Disposal, Inc., v. Texas Waste*, 161 F.3d 1259, 1262 (10th Cir. 1998) (explaining that a court "need not accept conclusory allegations without supporting factual averments" as true in deciding a Rule 12(b)(6) motion to dismiss).   Thus, the Court rejects Plaintiffs' contention that the complaint's allegations of continuous state custody are sufficient to preserve their ADA claims premised upon the DOH Defendants' actions of discharging Plaintiffs from the Training School and transferring them to ENMRSH.

For the foregoing reasons, the Court holds that Plaintiffs have failed to state a Title II ADA claim premised upon the DOH Defendants' alleged decisions to discharge Plaintiffs from the

Training School and transfer them to ENMRSH or another third-party setting.   Plaintiffs' ADA claims, to the extent they are premised upon Plaintiffs' discharges and transfers, are not actionable because this conduct occurred prior to the effective date of the ADA.   Accordingly, the Court grants the DOH Defendants' motion to dismiss Plaintiffs' ADA claims arising out of Plaintiffs' discharges from the Training School and transfers to third-party settings.

2.   Plaintiffs Have Not Stated an Actionable ADA Claim Because the Alleged Conduct Does Not Satisfy All of the Elements of a Prima Facie Case.

The Court next considers whether Plaintiffs have stated a viable ADA claim premised upon conduct unrelated to Plaintiffs' discharges from the Training School and transfers to third-party settings.   Plaintiffs ask the Court to deny the DOH Defendants' motion to dismiss their ADA claims, arguing that the complaint alleges that the DOH Defendants violated the ADA by engaging in conduct unrelated to Plaintiffs' discharges from the Training School and transfers to ENMRSH. As explained herein, none of the allegations on which Plaintiffs rely is sufficient to state an ADA claim.

Plaintiffs first rely upon the complaint's allegation that the DOH Defendants violated the ADA by failing to "make reasonable modifications in DOH policies and procedures when necessary to avoid discrimination against Plaintiffs on the basis of disability."   [*Id.*, ¶ 408(g)]. To state a claim under Title II of the ADA, a plaintiff must allege that (1) he or she is a qualified individual with a disability, (2) who was excluded from participation in or denied the benefits of a public entity's services, programs, or activities, and (3) such exclusion, denial of benefits, or discrimination was by reason of a disability.   *Robertson v. Las Animas Cty. Sheriff's Dep't*, 500 F.3d 1185, 1193 (10th Cir. 2007) (citing 42 U.S.C. § 12132) (additional citation omitted). Regarding the second element, a public entity excludes a disabled individual from participating in

and denies a disabled person the benefits of its programs and services when the entity fails to provide *meaningful* access to its programs and services.  *See id.* at 1195 ("The ADA requires more than physical access to public entities:  it requires public entities to provide '*meaningful* access' to their programs and services.") (quoting *Chaffin v. Kan. State Fair Bd.*, 348 F.3d 850, 857 (10th Cir. 2003) (explaining that the ADA requires public entities to provide disabled individuals "meaningful access" to their programs and opining that mere access—*i.e.*, physical presence at a public fair—that is not meaningful constitutes a denial of benefits to the fair)) (additional citation omitted).  Meaningful access may require "reasonable accommodations" in the public entity's program or benefit.  *Alexander v. Choate*, 469 U.S. 287, 301 (1985); *see also Chaffin*, 348 F.3d at 857.[11]  "[B]efore a public entity can be required under the ADA to provide an auxiliary aid necessary to afford an individual an equal opportunity to participate in the entity's services, programs, or activities, the entity must have knowledge that the individual is disabled, either because that disability is obvious or because the individual (or someone else) has informed the entity of the disability."  *Robertson*, 500 F.3d at 1196; *see also id.* at 1197 (explaining that when "a disabled individual's need for an accommodation is obvious, the individual's failure to expressly "request" one is not fatal to the ADA claim") (citation omitted).

Although Plaintiffs allege that the DOH Defendants failed to make "reasonable modifications" to the DOH's policies and procedures, this allegation is conclusory and unsupported by facts that, if true, allow the Court to draw the reasonable inference that the DOH

---

[11]   The Department of Justice has promulgated regulations to implement the nondiscrimination mandate of Title II, and "the regulations require public entities to 'make reasonable modifications in policies, practices, or procedures when the modifications are necessary to avoid discrimination on the basis of disability.'"  *Robertson*, 500 F.3d at 1195 (quoting 28 C.F.R. § 35.130(b)(7)); *see also* 42 U.S.C. § 12134(a) (requiring the Attorney General to promulgate regulations to implement Title II).

Defendants excluded Plaintiffs from participation in or denied Plaintiffs the benefits of the DOH's services.   The complaint contains no factual averments that identify the specific modifications to policies and procedures that the DOH failed to make, that confirm the necessity of the modifications to avoid discrimination on the basis of disability, that establish the reasonableness of the modifications, or that indicate that the modifications either were requested or that the need for the modifications was obvious.   The Court therefore concludes that Plaintiffs have not stated a plausible Title II claim premised upon the DOH Defendants' alleged failure to make reasonable modifications to their policies and procedures.

Plaintiffs next rely upon the complaint's allegation that the third-party AgePlan breached its contract with Plaintiffs, that the DOH Defendants were aware of AgePlan's breach, and that the DOH Defendants "did not correct" AgePlan's breach or "cure the effects" of the breach.   [Doc. 102 ¶ 128].   The omissions Plaintiffs allege, however, are not sufficient as a matter of law to satisfy the elements of a Title II claim.

The third element of a Title II claim requires a plaintiff to allege facts establishing that the exclusion, denial of benefits, or discrimination was "by reason of a disability."   *Robertson*, 500 F.3d at 1193.   The complaint, however, does not allege facts that allow the Court to draw the reasonable inference that the DOH Defendants failed to correct or cure AgePlan's breach by reason of Plaintiffs' disabilities.   The DOH Defendants correctly note that a failure to correct a breach of contract "does not equate to discrimination simply because the beneficiaries of the contract were disabled."   [Doc. 257 at 11].   Missing from the complaint are any allegations that, for example, the DOH Defendants failed to cure the effects of a third-party's breach of contract with Plaintiffs while they did cure and/or correct the effects of a third-party's breach of contract with non-disabled persons.   Nor do Plaintiffs allege any other facts that allow the Court

28

reasonably to infer that the DOH Defendants' failure to cure the effects of AgePlan's breach was motivated by discriminatory intent or by reason of Plaintiffs' disabilities.   Because Plaintiffs have failed plausibly to allege that the DOH Defendants acted by reason of Plaintiffs' disabilities, the Court holds that Plaintiffs have failed to state a Title II claim premised upon the DOH Defendants' alleged failure to cure the effects of AgePlan's breach of contract.

The Court also holds that Plaintiffs have failed to state an ADA claim premised upon the DOH Defendants' failure to correct the effects of AgePlan's breach because Plaintiffs have not alleged plausible facts that satisfy the second element of a Title claim—*i.e.*, that the public entity excluded a qualified individual with a disability from the benefits of a "public service[], program[], or activit[y]."   *Robertson*, 500 F.3d at 1193; *see also* 42 U.S.C. § 12132.

Courts have defined broadly what constitutes a public "service[], program[], or activit[y]" for purposes of Title II of the ADA and have held that the phrase encompasses almost "'anything a public entity does.'"   *Barden v. City of Sacramento*, 292 F.3d 1073, 1076 (9th Cir. 2002) (citation omitted), *cert. denied*, 539 U.S. 938 (2003); *see also Johnson v. City of Saline*, 151 F.3d 564, 569 (6th Cir. 1998) (finding that the phrase "programs, services, or activities" encompasses virtually everything that a public entity does"); *Innovative Health Sys., Inc. v. City of White Plains*, 117 F.3d 37, 45 (2d Cir. 1997) (reasoning that the phrase "programs, services, or activities" is "a catch-all phrase that prohibits all discrimination by a public entity, regardless of the context"), *superseded on other grounds Zervos v. Verizno New York, Inc.*, 252 F.3d 163, 171 n. 7 (2d Cir. 2001). Nonetheless, while the definition of a public "service[], program[], or activit[y]," is expansive, the phrase is not without limit, and the DOH Defendants' alleged failure to cure the effects of AgePlan's breach falls outside of that limit.

The "focus" of the inquiry into whether a particular public function constitutes a service,

program, or activity within the meaning to Title II "is not so much on whether a particular public function can technically be characterized as a service, program, or activity but whether it is 'a normal function of a governmental entity.'"   *Barden*, 292 F.3d at 1076 (quoting *Bay Area Addiction Research & Treatment, Inc. v. City of Antioch*, 179 F.3d 725, 731 (9th Cir. 1999)); *see Innovative Health Sys.*, 117 F.3d at 44 (holding that the ADA encompasses zoning decisions because zoning is "a normal function of a governmental entity"); *Barden*, 292 F.3d at 1076 (explaining that "maintaining public sidewalks is a normal function of a city and 'without a doubt something that the [City] does,'" and therefore holding that this activity falls within the scope of Title II) (quoting *Hason v. Medical Bd. of Cal.*, 279 F.3d 1167, 1173 (9th Cir. 2002)).   It is not a normal function of the government to correct or cure the effects of a third-party's breach of a private contract to which the public entity is neither a party nor in privity with a party.   Not surprisingly, Plaintiffs fail to advance any argument or cite any authority that stands for the proposition that the failure to cure the effects of a third-party's breach of a private, third-party contract constitutes the denial of a public service, program, or activity within the meaning of the ADA, and this Court finds no such authority.   The Court therefore concludes that, because it is not a normal government function for the state to cure the effects of a third-party contract between private parties with whom the state is not in privity, Plaintiffs have failed plausibly to allege that the DOH Defendants denied Plaintiffs a public service or benefit within the meaning of the ADA.

Plaintiffs last rely upon the complaint's allegation that the DOH Defendants breached their 2010 settlement agreement with a group of plaintiffs in a 2007 lawsuit that obligated the DOH Defendants to afford former Training School residents (including Plaintiffs) with support and assistance as well as the complaint's allegation that the DOH Defendants have "discriminated against [Training School] residents on the basis of their disabilities in their official review of

30

whether former residents continued to be endangered, exploited and neglected."   [Doc. 102 ¶ 9]. The DOH Defendants' alleged conduct, however, even if true, does not state an ADA claim because Plaintiffs have failed to allege facts from which the Court reasonably could infer that the defendants acted "by reason of" Plaintiffs' disabilities.

The complaint does not allege, for example, that the DOH Defendants breached their obligations under the 2010 settlement agreement to support disabled persons but that they honored their obligations in other settlement agreements involving non-disabled persons, or that the DOH Defendants failed to review cases of individuals with disabilities but did review cases of individuals without disabilities.   Nor does the complaint allege that the DOH Defendants treated Plaintiffs differently from some other class of disabled persons, such as individuals with more or less severe disabilities.   The absence of such allegations is fatal to Plaintiffs' Title II claim, and the Court therefore holds that Plaintiffs have failed to state an ADA claim premised upon the DOH Defendants' alleged breach of the 2010 settlement agreement and their alleged discriminatory official review of Plaintiffs' condition.

For the foregoing reasons, the Court concludes that Plaintiffs have failed to state a Title II ADA claim premised upon the DOH Defendants' (1) alleged failure to modify the DOH's policies and procedures, (2) alleged failure to correct or cure AgePlan's breach of contract, (3) alleged breach the 2010 settlement agreement, or (4) discriminatory official review of Plaintiffs' status. The Court therefore grants the DOH Defendants' motion to dismiss Plaintiffs' ADA claims to the extent those claims are premised upon any of this alleged conduct.

C.    The Court Denies in Part and Grants in Part the Motion to Dismiss Rehabilitation Act Claims Against the DOH, the LLCP, and the Training School.

The DOH Defendants move to dismiss Plaintiffs' claims pursuant to Section 504 of the Rehabilitation Act against the DOH, the LLCP, and the Training School on two grounds.   First, the DOH Defendants characterize Plaintiffs' Section 504 claims as challenging the treatment and services Plaintiffs received while at ENMRSH and maintain that an alleged failure to provide services or discrimination while Plaintiffs were "housed" at a private, third-party facility cannot support a Rehabilitation Act claim against the state.   [Doc. 216 at 4].   Second, the DOH Defendants assert that, even if Plaintiffs could state a Section 504 claim against the state while Plaintiffs were receiving services from a third-party provider, the Court nonetheless should dismiss Plaintiffs' Rehabilitation Act claims because Plaintiffs have failed to allege facts that satisfy the elements of their prima facie case.

1.    Plaintiffs' Receipt of Services from ENMRSH Does Not Insulate the DOH Defendants' from Section 504 Liability.

The DOH Defendants' argument that Plaintiffs cannot state a Section 504 claim premised on treatment they received while "housed" at ENMRSH is flawed for two reasons.   First, the DOH Defendants erroneously characterize the complaint as challenging only the care and treatment Plaintiffs received "once placed at ENMRSH" and not as challenging the treatment and services Plaintiffs received "while at the Training School[], under DOH care."   [Doc. 216 at 4]. This reading of the complaint is not supported by its allegations.

The complaint contains multiple allegations that challenge acts or omissions by the DOH Defendants that occurred while Plaintiffs were "housed" at DOH facilities.   [Doc. 236 at 9 (arguing in opposition to the motion to dismiss that the complaint "explicitly" alleges Rehabilitation Act claims—under both failure to accommodate and discrimination theories—that

occurred while Plaintiffs were "housed" at DOH facilities)].    The complaint alleges, for example, that the DOH Defendants failed to reasonably accommodate Plaintiffs' needs in the operation of the Training School in violation of Section 504 of the Rehabilitation Act by "plac[ing] Plaintiffs with outside agencies and third parties without taking into account Plaintiffs' disabilities and their needs for education, habilitation, [and] medical, dental and mental health . . . services," [Doc. 102 ¶408(d)], and that the DOH Defendants discriminated against Plaintiffs in "the operation of the Training School, the community-based developmental disability system, and the State's protective services due to Plaintiffs' disabilities" by placing Plaintiffs into third-party settings and by denying Plaintiffs services, [*id.* ¶ 408 (e)].    These allegations, when construed in Plaintiffs' favor, charge the DOH Defendants with conduct that occurred while Plaintiffs either were "at" the Training School or, if not receiving services directly from the Training school, while Plaintiffs were "under DOH care."

While the complaint alleges that acts and omissions occurred as a result of Plaintiffs' placements in third-party settings, the facts construed in Plaintiffs' favor indicate that at least a portion of the placements occurred on "aftercare" prior to Plaintiffs' discharges from the Training School.    During these aftercare placements, Plaintiffs were still residents of the Training School and the DOH Defendants were still charged with the duty to care for Plaintiffs.    Accordingly, the Court rejects the DOH Defendants' contention that Plaintiffs do not state a Section 504 claim because the complaint is premised only upon treatment and services received at ENMRSH and not upon treatment and services received while "at" the Training School under the DOH Defendants' care.

The DOH Defendants' argument also is flawed for a second reason.    Defendants improperly assume that Section 504 liability necessarily is tied to Plaintiffs' physical

placement—*i.e.*, that placement at ENMRSH precludes liability against the state and placement at the Training School is a necessary (but insufficient) condition for imposing liability on the state—instead of to the elements of a Section 504 claim.   [Doc. 216 at 4 (arguing that a Rehabilitation Act claim "address[es] an alleged failure to provide services or benefits, or discrimination, while Plaintiffs were housed at DOH facilities" and that "a challenge to their discharge [from the Training School] and community placement does not implicate the Rehabilitation Act"); Doc. 257 at 6 (arguing that a "challenge to Plaintiffs' placements with ENMRSH, no matter how it is characterized, does not give rise to a Rehabilitation Act claim")].  The DOH Defendants' assumption is inconsistent with the plain language of Section 504 as well as the elements of a Section 504 claim.

The DOH Defendants fail to cite, and this Court has not found, any authority for the proposition that a public entity's denial of benefits or discriminatory conduct is actionable only if—at the time the public entity denies the benefits or engages in the discriminatory acts—the plaintiff is not receiving services from a third-party provider.  Rather, the plain language of Section 504 provides only that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."  29 U.S.C. § 794(a).  This language does not shield a public entity from liability if a plaintiff is receiving third-party services.  Moreover, in the Tenth Circuit, a plaintiff seeking to state a Section 504 claim need only prove (1) that he or she is a "handicapped individual" under the Act, (2) that he or she is "otherwise qualified" to participate in the program or activity in question, (3) that he or she was excluded from the program or activity or discriminated against solely by reason of his or her handicap, and (4) that the program or activity in

question receives federal financial assistance.  *Cohon ex rel. Bass v. N.M. Dep't of Health*, 646

F.3d 717, 725 (10th Cir. 2011) (citing *Johnson by Johnson v. Thompson*, 971 F.2d 1487, 1492

(10th Cir. 1992), *cert. denied*, 507 U.S. 910 (1993)).  The Tenth Circuit does not require a

plaintiff to establish that he or she was not receiving third-party services.

Rather, what is relevant to the question of liability is whether Plaintiffs have alleged that

the *program or activity in question* excluded Plaintiffs from participation in, denied Plaintiffs the

benefit of, or subjected Plaintiffs to discrimination by reason of Plaintiffs' disability (third

element), and whether Plaintiffs have alleged that they were *otherwise qualified* to participate in

the program or receive the benefits (second element).  *Id*.  These inquiries function

independently of whether a third-party provider—such as ENMRSH—was, or was not, supplying

Plaintiffs with services or benefits.   Rather, these inquiries turn on whether the complaint alleges

facts establishing that the DOH Defendants (and not ENMRSH) engaged in prohibited conduct,

and whether the complaint alleges that Plaintiffs, although placed at ENMRSH, nonetheless were

qualified to receive the benefits offered by the Training School.  Because neither the plain

language of the statute nor the elements of a Section 504 claim shield the DOH Defendants from

liability for claims arising out of conduct that occurred while Plaintiffs were placed in a third-party

setting, the Court declines to dismiss Plaintiffs' Rehabilitation Act claims on the ground that

Plaintiffs' placements in a third-party setting immunize the DOH Defendants from Section 504

liability.

> 2.      Plaintiffs Have Alleged Facts That State a Prima Facie Section 504 Claim
> Premised Upon a Failure to Accommodate But Have Not Alleged Facts
> That State a Prima Facie Claim Premised Upon Discrimination.

The DOH Defendants argue in the alternative that, even if Plaintiffs could state a Section

504 claim against the state while receiving services from a third-party provider such as ENMRSH,

Plaintiffs' Rehabilitation Act claims nonetheless fail because Plaintiffs have not alleged facts that if true establish all of the elements of a Section 504 claim.  Defendants challenge Plaintiffs' ability to state a claim under both a failure to accommodate and a discrimination theory, arguing that under either theory Plaintiffs have failed to allege facts that satisfy the third element of a Section 504 claim.[12]

   a. <u>Plaintiffs Have Stated a Prima Facie Claim Premised Upon a Failure to Reasonably Accommodate</u>.

The DOH Defendants first assert that Plaintiffs have failed to state a Section 504 claim premised upon a failure to accommodate theory.   The complaint alleges that the DOH Defendants failed "to reasonably accommodate Plaintiffs' needs in the operation of the Training School," such as when "DOH Defendants placed Plaintiffs with outside agencies and third parties without taking into account Plaintiffs' disabilities and their needs for education, habilitation, . . . medical, . . . and

---

[12]   The DOH Defendants also argue that the Court should dismiss Plaintiffs' Rehabilitation Act claims because Plaintiffs have not alleged facts that satisfy the fourth element of a Section 504 claim—*i.e.*, that the disability discrimination was committed by an entity receiving federal financial assistance.  Defendants argue that Plaintiffs "have not contested that it was ENMRSH (not DOH Defendants) that received federal funds for their care after they were discharged into ENMRSH's care," and maintain that Plaintiffs "therefore have no viable Rehabilitation Act claim against DOH Defendants."   [Doc. 257 at 4-5].  The DOH Defendants cite no authority for the proposition that Plaintiffs must establish that the DOH received federal funds specifically earmarked for Plaintiffs' care, and the Court finds none.  Rather, the plain language of Section 504 establishes that the Act broadly applies to programs and activities "receiving Federal financial assistance" and does not limit the Act's applicability to programs or activities that receive federal financial assistance earmarked for the particular plaintiff bringing suit.  29 U.S.C. § 794.  Moreover, the Tenth Circuit has held that to state a prima facie case a plaintiff need only establish that a program receives federal financial assistance or is a federal agency.  *Powers v. MJB Acquisition Corp.*, 184 F.3d 1147, 1151 (10th Cir. 1999).  The Court declines to adopt Defendants' construction of the Act because it is contrary to the plain language of the Act and Tenth Circuit precedent.

other supports and services."   [Doc. 102 ¶408(d)].[13]   The DOH Defendants maintain that missing from these allegations is any assertion that Plaintiffs requested and that the DOH Defendants refused to provide any accommodation.   [Doc. 257 at 6].

The third element of a Section 504 claim requires a plaintiff to establish that he or she was excluded from a program or activity or discriminated against solely by reason of his or her handicap.   *Cohon*, 646 F.3d at 725.   Section 504 of the Rehabilitation Act, like Title II of the ADA, requires public entities not simply to provide access to public programs but rather to provide *meaningful* access to public benefits and participation in public programs; meaningful access requires public entities to make reasonable modifications to public programs to ensure access to individuals with disabilities.   *Barber ex rel. Barber v. Colo. Dep't of Revenue*, 562 F.3d 1222, 1226 n.2 (10th Cir. 2009) (citations omitted).

Under Section 504, the DOH Defendants were required to make reasonable modifications to the Training School's aftercare program and placements into that program to ensure that Plaintiffs received the benefits of involuntary civil commitment at the Training School.   While the DOH Defendants contend that Plaintiffs have failed to allege that the DOH Defendants refused to provide any requested modification, a plaintiff need not request a modification if its need is obvious, *Robertson*, 500 F.3d at 1197 (citation omitted), and therefore the absence of allegations indicating that Plaintiffs requested a modification and that the DOH Defendants refused to provide it is not fatal to Plaintiffs' Section 504 claims.

---

[13]   The complaint also alleges that the DOH Defendants "fail[ed] to make reasonable modifications in DOH policies and procedures when necessary to avoid discrimination against Plaintiffs on the basis of disability."   [*Id.* ¶ 408(g)].   This is the identical allegation that Plaintiffs make in support of their Title II ADA claim, and the Court already has held that this allegation is a legal conclusion and therefore insufficient to state an ADA claim.   The Court similarly holds that this legal conclusion does not state a Section 504 claim.

To the contrary, the Court holds that Plaintiffs have alleged facts which, if true and construed in Plaintiffs' favor, are sufficient to state a Section 504 claim premised upon a failure to reasonably accommodate Plaintiffs.   Plaintiffs' allegations, construed in their favor, give rise to the following reasonable inferences: (1) the DOH Defendants failed to provide Plaintiffs with meaningful access to the benefits of institutional care when they placed Plaintiffs on aftercare at ENMRSH; (2) by placing Plaintiffs on aftercare at ENMRSH the DOH Defendants deprived Plaintiffs habilitation, education, medical, and mental health services available at the Training School that were necessary either to avoid discrimination on the basis of disability or to ensure meaningful access to the benefits of involuntary civil commitment; (3) Plaintiffs' need for the direct services provided by the Training School was obvious to the DOH Defendants; and (4) the DOH Defendants could have made reasonable modifications to their system of aftercare placement to ensure that Plaintiffs had meaningful access to all of the benefits that involuntary institutional commitment to the Training School provided.

For the foregoing reasons, the Court concludes that Plaintiffs have stated a plausible Section 504 claim premised upon a failure to accommodate theory.   Thus, the Court denies the DOH Defendants' motion to dismiss Plaintiffs' Rehabilitation Act claims to the extent the claims are premised upon a failure to make a reasonable modification.

> b.    <u>Plaintiffs Have Not Stated a Prima Facie Case of Discrimination</u>.

The DOH Defendants contend that the Court should dismiss Plaintiffs' claim pursuant Section 504 of the Rehabilitation Act to the extent that claim is premised upon a discrimination theory because Plaintiffs have failed to allege facts establishing that the DOH Defendants excluded Plaintiffs from a program or activity or discriminated against Plaintiffs solely by reason of their handicaps.   *Cohon*, 646 F.3d at 725 (citing *Johnson*, 971 F.2d at 1492).   The DOH

Defendants maintain that, while the complaint alleges that they discriminated against Plaintiffs "in the operation of the Training School[] . . . and the State's protective service" "due to Plaintiffs' disabilities" by placing Plaintiffs into a third-party setting and by denying Plaintiffs education, habilitation, medical, and other services, [*id.* ¶ 408(e)], Plaintiffs have not alleged facts that establish that Defendants' conduct constituted *intentional discrimination* against Plaintiffs. [Doc. 257 at 5].   Defendants point out that "[Plaintiffs] make no allegation that DOH Defendants . . . provided the supports and services in question to other types of disabled persons while denying them to Plaintiffs" and argue that the "placement procedures in question—even if faulty or negligent—simply do not equate to excluding Plaintiffs [or] denying them benefits . . . due to their disabilities."   [*Id.* at 5-6].   The DOH Defendants also maintain that, while Plaintiffs "attempt to state a claim of discrimination . . . by restating their allegations of violations of the Medicaid Act," these allegations do not state a claim because "Plaintiffs do not claim that such alleged failures were motivated by a discriminatory intent, or that DOH Defendants complied with such requirements with respect to other groups of disabled or non-disabled persons but not with respect to Plaintiffs due to their disabilities."   [*Id.* at 7].

The DOH Defendants' arguments are persuasive.   The third element of a Section 504 claim requires Plaintiffs to allege facts establishing that the DOH Defendants excluded Plaintiffs from a program or activity or discriminated against Plaintiffs solely by reason of their handicaps. *Cohon*, 646 F.3d at 725.   Plaintiffs have failed to allege any facts establishing that the DOH Defendants' actions towards Plaintiffs—*i.e.*, either of placing Plaintiffs into third-party settings or violating various provisions of the Medicaid Act—were motivated by discriminatory intent or by reason of Plaintiffs' disabilities.   The complaint does not allege, for example, that the DOH Defendants treated members of a similarly-situated class differently.   Nor does the complaint

allege any other discriminatory motive for the DOH Defendants' third-party placements or Medicaid Act violations.[14]   The absence of such allegations compels the Court to conclude that Plaintiffs have failed plausibly to allege that the DOH Defendants discriminated against Plaintiffs by reason of their disabilities.

For the foregoing reasons, the Court holds that Plaintiffs have failed to state a Section 504 claim premised upon discrimination.   Accordingly, the Court grants the DOH Defendants' motion to dismiss Plaintiffs' Rehabilitation Act claims premised upon a theory of discrimination.

III.   The Motion to Dismiss NMTCA Claims [Doc. 217].

The DOH Defendants move to dismiss Plaintiffs claims under the New Mexico Tort Claims Act on the grounds that (1) Plaintiff JL cannot state a claim under the Act because his discharge from the Training School occurred prior to the effective date of the Act, [Doc. 217 at 3], and (2) the claims of the remaining Plaintiffs are barred by the Act's two-year statute of limitations.   Plaintiffs contend that their allegations of ongoing and continuous state custody preserve JL's claim and that the allegations of mental incapacity and the doctrine of fraudulent concealment toll the Act's two-year statute of limitations.   [Doc. 238 at 2].

---

[14]   While Plaintiffs rely upon *Illinois League of Advocates for the Developmentally Disabled v. Quinn*, No. 13-C-1300, 2013 WL 5548929 (N.D. Ill. Oct. 8, 2013), for the proposition that an alleged transfer from a state-run facility to a community-integrated living arrangement states a claim under Section 504 of the Rehabilitation Act, this case is distinguishable.   In *Quinn*, the plaintiffs alleged facts that if true established that the state defendants intentionally targeted the plaintiff class members for severe cuts in funding (and in turn benefits) while the state failed to subject members of a similarly-situated class (*i.e.*, persons with other types of disabilities) to severe budget cuts.   *Id.* at *7-8.   Plaintiffs here allege no such disparate treatment.   Therefore, *Quinn* is not applicable.

A.      The Court Grants the Motion to Dismiss JL's New Mexico Tort Claims
        Act Claim.

The Court first addresses the DOH Defendants' contention that the Court should dismiss

JL's claim pursuant to the Tort Claims Act because the allegedly wrongful acts that give rise to

JL's claim occurred prior to the effective date of the Act.   Although Plaintiffs argue that JL's

claim is viable because Plaintiffs have alleged that they continuously have been in state custody

since the time of their initial commitments, the Court already has rejected this argument in the

context of holding that Plaintiffs have failed to state an ADA claim.   Because the Court agrees

that JL's claims under the New Mexico Tort Claims Act arise out of alleged actions that occurred

prior to the Act's effective date, the Court grants the DOH Defendants' motion to dismiss JL's

Tort Claims Act claim.

B.      The Court Denies the Motion to Dismiss the Remaining Plaintiffs' Claims Under
        the Tort Claims Act.

The DOH Defendants maintain that the Court should dismiss the remaining Plaintiffs'

claims under the Tort Claims Act because the Act contains a two-year statute of limitations on

claims, and the Act explicitly provides that the limitations period is not subject to tolling.

Plaintiffs, in contrast, ask the Court to toll the statute of limitations pursuant to the doctrines of

legal disability or fraudulent concealment.

1.      The Statute of Limitations Is Not Subject to Tolling on the Basis of
        Plaintiffs' Disabilities.

Section 41-4-15(A) of the Tort Claims Act provides that "[a]ctions against a governmental

entity or a public employee for torts shall be forever barred, unless such action is commenced

within two years after the date of occurrence resulting in loss, injury or death," and explicitly

provides that "[t]his subsection applies to all persons regardless of minority or other legal

disability." N.M. Stat. Ann. § 41-4-15(A).  In *Jaramillo v. State*, the New Mexico Court of Appeals upheld the Tort Claims Act's time bar against a constitutional challenge brought by an incapacitated adult.   809 P.2d 636, 640 (N.M. Ct. App. 1991) (holding in the context of declining to toll the statute of limitations for a plaintiff sustaining brain damage "that the failure of Section 41-1-15(A) to provide a tolling provision for persons under a legal disability with claims against governmental entities does not violate the right of [the plaintiff] to equal protection of the laws"), *cert. denied*, 806 P.2d 65 (N.M. 1991).   Plaintiffs nonetheless argue that because, in dicta, the New Mexico Court of Appeals has referred to persons with developmental disabilities as "perhaps [the] most fragile class of citizens," *LaBalbo v. Hymes*, 850 P.2d 1017, 1020 (N.M. Ct. App. 1993), *aff'd*, 851 P.2d 481 (N.M. 1993) and because the New Mexico Supreme Court has asserted that "[i]n recent history, New Mexico has been at the forefront of affording greater protection for the mentally disabled," *Breen v. Carlsbad Mun. Schs.*, 120 P.3d 413, 422 (N.M. 2005), this Court should decline to apply *Jaramillo* and instead should certify to the New Mexico Supreme Court the question "whether Section 41-4-15 violates the state constitutional rights of mentally disabled adults who are 'incapable of meeting . . . the deadline.'" [Doc. 238 at 9 (quoting *Campos v. Murray*, 134 P.3d 741, 743 (N.M. 2006))].

The Court declines this invitation.   The plain language of the New Mexico Tort Claims Act provides that the two-year statute of limitations applies "regardless of minority or other legal disability," N.M. Stat. Ann. § 41-4-15(A), and the Court of Appeals in *Jaramillo* strictly enforced the Act's prohibition on tolling and barred a mentally incapacitated adult's claim that fell outside of the two-year limitations period.   809 P.3d at 640.[15]   Thus, it is clear that New Mexico law

---

[15]   "Where no controlling state decision exists, the federal court must attempt to predict what the state's highest court would do," and, "[i]n doing so, it may seek guidance from decisions rendered

does not provide for tolling on the basis of mental incapacity.   The Court therefore declines to apply the doctrine of tolling to preserve Plaintiffs' claims and rejects Plaintiffs' invitation to certify the question to the New Mexico Supreme Court whether the Act's prohibition on tolling violates Plaintiffs' state constitutional rights.   *See J.M. v. N.M. Dep't of Health et al.*, No. 07-CV-0604 RB/ACT, Mem. Op. & Order [Doc. 194] (D.N.M. filed Dec. 31, 2008) (declining to certify the question whether the Tort Claims Act's two-year statute of limitations and its prohibition on tolling is constitutional) .

> 2.   The Statute of Limitations Is Subject to Tolling on the Basis of the Doctrine of Fraudulent Concealment.

Plaintiffs in the alternative argue that, if the Court declines to toll the statute of limitations on the basis of Plaintiffs' legal disabilities, the Court should toll the statute of limitations pursuant to the doctrine of fraudulent concealment.   "[W]here a party against whom a cause of action accrues prevents the one entitled to bring the cause from obtaining knowledge thereof by fraudulent concealment, . . . or where the cause is known to the injuring party, but is of such character as to conceal itself from the injured party, . . . the statutory limitation on the time for bringing the action will not begin to run until the right of action is discovered, or, by the exercise of ordinary diligence, could have been discovered."   *Hardin v. Farris*, 530 P.2d 407, 410 (N.M. Ct. App. 1974) (citation omitted).   The doctrine of fraudulent concealment applies to causes of action grounded in negligence and is not restricted to actions for fraud.   *See id*. (explaining that the doctrine "is not restricted to actions in which fraud is the gist of the action") (citations omitted); *Ramsey v. Culpepper*, 738 F.2d 1092, 1096 (10th Cir. 1984) ("The fraudulent concealment

---

by lower courts in the relevant state."   *Wade v. EMCASCO Ins. Co.*, 483 F.3d 657, 666 (10th Cir. 2007).

doctrine is codified as to fraud actions in the New Mexico statutes, but applies equally to causes of action grounded in negligence.") (citation omitted).

To invoke the doctrine of fraudulent concealment, a plaintiff must establish the existence of a confidential or fiduciary special relationship that gives rise to a duty to disclose. *Garcia v. Presbyterian Hosp. Ctr.*, 593 P.2d 487, 490 (N.M. Ct. App. 1979). "An analysis of [cases involving fraudulent concealment] reveals that the nature of the relationship which creates a duty to disclose, and a breach of which duty constitutes constructive fraud or fraudulent concealment, springs from the confidence and trust reposed by one in another who, by reason of a specific skill, knowledge, training, judgment, or expertise, is in a superior position to advise or act on behalf of the party bestowing trust and confidence in him." *Id.* "Once the relationship exists 'there exists a duty to speak . . . (and) mere silence constitutes fraudulent concealment.'" *Id.* (quoting *Hardin*, 530 P.2d at 410)); *Keithley v. St. Joseph's Hosp.*, 698 P.2d 435, 439 (N.M. Ct. App. 1984) (explaining that "New Mexico follows the rule that where a fiduciary duty or confidential relationship exists, as between a physician and a patient, a duty arises to disclose all material information concerning the patient's treatment" and that a "failure to do so may constitute fraudulent concealment") (citations omitted). The breach of the duty that constitutes fraudulent concealment "may be active, because of some affirmative act to conceal information that may give the [plaintiff] a cause of action, or passive, because of the [actor's] failure to disclose material information to the [plaintiff]." *Id.* (citations omitted); *Hardin*, 530 P.2d at 410 (explaining that although "[n]ormally some positive act of concealment must be shown such as a false representation," "in a confidential relationship where there exists a duty to speak, such as in a doctor-patient relationship, mere silence constitutes fraudulent concealment") (citation omitted).

"Moreover, the false statement or omission by a defendant who has a special relationship with the plaintiff may also constitute constructive fraud." *Ramsey*, 738 F.2d at 1096. "'Generally speaking constructive fraud is a breach of a legal or equitable duty which the law declares fraudulent *because of its tendency to deceive others.* Such fraud may be present on the part of the fraud feasor *without any showing of dishonesty of purpose or intent to deceive.*'" *Id.* (quoting *Gaston v. Hartzell*, 549 P.2d 632, 634 (N.M. 1976)). "Fraudulent concealment, whether active or passive, can toll the running of the statute of limitations." *Keithley*, 698 P.2d at 439 (citations omitted).

Plaintiffs have alleged facts that, if true, state a claim for fraudulent concealment. To state a fraudulent concealment claim, a plaintiff must establish the existence of a confidential or fiduciary special relationship with the defendant that gives rise to a duty to disclose. *Garcia*, 593 P.2d at 490. A plaintiff also must establish that the actor knew of the alleged wrongful act and concealed it from the plaintiff or had material information pertinent to its discovery which he failed to disclose, and that the plaintiff did not know or could not have known through the exercise of reasonable diligence of his cause of action within the statutory period. *Kern*, 697 P.2d at 139.

Plaintiffs have alleged facts that if true establish the existence of a special relationship with the state. The complaint alleges that Plaintiffs are developmentally disabled adults who are and were at the time of their placements at the Training School incapacitated due to their developmental disabilities, [Doc. 102 ¶ 367], that Plaintiffs JL, EH, RH, DA, and KC involuntarily were committed by court order to the Training School, [*id.* ¶¶ 1, 12-17], and Plaintiff GS was admitted to the Training School in 1973 pursuant to the 1953 code's provisions for voluntary commitment. [*Id.* ¶¶ 1, 17]. The state's actions of involuntarily committing Plaintiffs (with the exception of GS) to state custody gave rise to a special relationship and a corresponding duty to

protect and provide services.   *DeShaney v. Winnebago Cty. Dep't of Soc. Servs.*, 489 U.S. 189, 199-200 (1989); *Johnson v. Holmes*, 455 F.3d 1133, 1142-43 (10th Cir. 2006).   Moreover, Plaintiffs' developmental disabilities and their mental incapacity, as well as the state's assumption of the duty to act in parens patraie, gave rise to a duty to "vouchsafe due process" and required the DOH Defendants to fully advise Plaintiffs, or persons acting on their behalf, of their rights unless knowingly and understandingly waived.   *See Heryford v. Parker*, 396 F.2d 393, 396 (10th Cir. 1968).   Without a doubt, Plaintiffs' allegations implicate the very sort of confidential or fiduciary special relationship envisioned in *Garcia*.   509 P.2d at 490.

Because such a special relationship existed, the DOH Defendants had a duty of disclosure. *Hardin*, 530 P.2d at 410; *Keithley*, 698 P.2d at 440.   Plaintiffs' allegations sufficiently state that Defendants breached that duty.   Specifically, Plaintiffs have alleged that the DOH Defendants discharged Plaintiffs from the Training School without informing Plaintiffs of their discharges or that the DOH Defendants purported to sever the state's custodial relationship with Plaintiffs, and that the DOH Defendants discharged and transferred Plaintiffs post-discharge to third-party settings without notice to Plaintiffs, without obtaining informed consent, and either without judicial process or without notice and an opportunity to be heard in that process.   These allegations are sufficient to allow the Court reasonably to conclude that, on the facts construed in Plaintiffs' favor, the DOH Defendants knew that they were discharging Plaintiffs from the Training School, and that the DOH Defendants either concealed their discharge decisions from Plaintiffs or failed to disclose the decisions to Plaintiffs.

The Court also concludes that, on the facts alleged, Plaintiffs did not know and could not have known through the exercise of reasonable diligence that the DOH Defendants were purporting to discharge Plaintiffs from the Training School or transferring Plaintiffs

post-discharge to third-party settings.   In their opposition to the motion to dismiss, Plaintiffs

argue that the Court in evaluating whether Plaintiffs were "justifiably ignorant" should consider

"'[Plaintiffs'] powers of understanding and comprehension in respect of the administration of

[their] affairs, as well as the degree of trust and confidence imposed in [their caretakers].'"   [Doc.

238 at 12 (citing *Chisholm v. House*, 183 F.2d 698, 706 (10th Cir. 1950))].   Plaintiffs also point

out that the state declared them legally incompetent, [*id.*], and maintain that "[e]ven after their

transfers from the Training School, Plaintiffs were in no position to discover how Defendants had

succeeded in renouncing further responsibility for them."   [*Id.*].   Construing the facts alleged in

Plaintiffs' favor, the Court concludes that Plaintiffs could not have known through the exercise of

reasonable diligence of their cause of action within the statutory period.   *Cf. Kern*, 697 P.2d at

139.

The Court is not dissuaded from its holding by the DOH Defendants' argument that,

pursuant to the discovery rule, which starts the running of the statutory clock, Plaintiffs reasonably

should have discovered the allegedly concealed facts "shortly after their transfers" to ENMRSH,

or, at the latest, in 2007, when the attorneys who now represent Plaintiffs filed a complaint on

behalf of a group of similarly-situated plaintiffs.   *See Slusser*, 306 P.3d 524, 528 (N.M. Ct. App.

2013) (explaining that the statute begins to run only when the plaintiff acquires, or with reasonable

diligence should have acquired, knowledge of the facts, conditions, or circumstances which would

have caused a reasonable person to make an inquiry leading to discovery of the concealed cause of

action).   Neither of these arguments is compelling.

The DOH Defendants maintain that under the discovery rule, "Plaintiffs need only have

discovered the existence of predicate facts to a cause of action, even if they did not recognize the

legal significance of the known facts," and that, "[w]hile Plaintiffs point to their allegation that

'[d]efendants fraudulently concealed from Plaintiffs their actions in 'discharging' Plaintiffs from the Training School, depriving Plaintiffs of any opportunity to know when Defendants had abandoned them,' . . . Plaintiffs knew or should have known the relevant facts—that they were under the care of ENMRSH, as opposed to DOH Defendants, and allegedly receiving substandard care—shortly after their transfers."   [Doc. 255 at 13 (quoting Doc. 102 ¶ 369)].   The Court already has noted, however, in the context of ruling upon the Individual DOH Defendants' motions to dismiss on the ground of qualified immunity, that Plaintiffs had no basis for perceiving any difference between their aftercare and post-discharge placements at NMRSH, and therefore, the Court rejects the DOH Defendants' contention that Plaintiffs should have been aware that the DOH Defendants had discharged Plaintiffs and that they were now under the care only of ENMRSH.[16]

---

[16]   The Court explained in its September 30, 2015, Memorandum Opinion and Order,

> It is clear that, from Plaintiffs' perspective, their final placements at ENMRSH were no different from their third-party aftercare placements at ENMRSH.  Defendants had placed Plaintiffs (with the exception of GS) repeatedly on aftercare at ENMRSH only to return them to the Training School thereafter.  During these aftercare placements, Plaintiffs were still under court-ordered commitments that had not been, as of then, purportedly terminated by Defendants' discharges of Plaintiffs from the Training School or by any court of law.  Moreover, that Defendants discharged Plaintiffs from the Training School and purported to sever the state's legal custody over Plaintiffs is of no consequence, for on the facts alleged Plaintiffs had no way of discerning that Defendants' post-discharge placements of Plaintiffs at ENMRSH were any different from their pre-discharge placements at ENMRSH on aftercare.

[Doc. 375 n. 10].

The Court also rejects the DOH Defendants' contention that Plaintiffs should have discovered the facts underlying their discharges as early as 2007, because in 2008, the attorneys who represent Plaintiffs filed a similar complaint on behalf of a group of similarly-situated plaintiffs making "nearly identical allegations" to those the attorneys made on Plaintiffs' behalf in this case.   [Doc. 255 at 14 (citing *J.M. v. N.M. Dep't of Health et al.*, No. 07-CV-0604 RB/ACT (D.N.M.))].     The DOH Defendants reason that, "[e]ven assuming Plaintiffs or their representatives were unaware of the circumstances surrounding their discharges at the time they occurred from 1976 through 1980, Plaintiffs' attorneys were certainly aware of those circumstances in 2007 when filing a complaint on behalf of similarly situated plaintiffs based on nearly identical circumstances."   [*Id.*].   Under the discovery rule, however, the Court must determine whether the *plaintiffs*—not future, would-be attorneys of the plaintiffs—with reasonable diligence should have acquired knowledge of the facts, conditions, or circumstances that would have caused a reasonable person to make an inquiry leading to discovery of the concealed cause of action.   *Slusser*, 306 P.3d at 528.   And simply because Plaintiffs' future attorneys *may have had* knowledge of the facts surrounding Plaintiffs' discharges does not place a reasonable person in Plaintiffs' position on notice of the discharges.

The Court holds that, for the foregoing reasons, Plaintiffs have alleged facts that state a plausible claim under the New Mexico Tort Claims Act.   Although Plaintiffs' claims fall outside of the two-year limitations period in the Act, Plaintiffs have alleged facts that trigger the doctrine of fraudulent concealment.   Accordingly, because the doctrine of fraudulent concealment tolls the statute of limitations, the Court denies the DOH Defendants' motion to dismiss Plaintiffs' New Mexico Tort Claims Act claims.

IV.     The Motion to Dismiss Constitutional and Developmental Disabilities Act Claims [Doc. 292].

The DOH Defendants move to dismiss Plaintiffs' 42 U.S.C. Section 1983 constitutional claims for violation of the First, Fourth, and Fourteenth Amendments as well as Plaintiffs' claims pursuant to the New Mexico Mental Health and Developmental Disabilities Code ("Developmental Disabilities Code").   [Doc. 292 at 3].   In support of their requested relief, the DOH Defendants maintain that Plaintiffs' federal Section 1983 constitutional claims and Plaintiffs' Developmental Disabilities Act claims are barred by the two-year statute of limitations in the New Mexico Tort Claims Act.   [*Id.*].

At the outset, the Court notes that the complaint does not allege any claims for violation of the Developmental Disabilities Code.   [Doc. 102 ¶¶ 372-531; Doc. 295 at 3].   Accordingly, the DOH Defendants' motion to dismiss Plaintiffs' Developmental Disabilities Code claims is moot, and the Court therefore denies the motion as moot.

The Court also denies the DOH Defendants' motion to dismiss Plaintiffs' Section 1983 claims.   Neither the two-year statute of limitations in the Tort Claims Act nor its prohibition on tolling applies to Plaintiffs' Section 1983 federal constitutional claims.

The text of Section 1983 does not contain a statute of limitations.   "'When Congress has not established a time limitation for a federal cause of action, the settled practice has been to adopt a local time limitation as federal law if it is not inconsistent with federal law or policy to do so.'" *Varnell v. Dora Consol. Sch. Dist.*, 756 F.3d 1208, 1212 (10th Cir. 2014) (quoting *Wilson v. Garcia*, 471 U.S. 261, 266-67 (1985)).   In deciding what state statute of limitations governs a federal Section 1983 claim, the Supreme Court has "assumed that 'Congress intended the identification of the appropriate statute of limitations to be an uncomplicated task for judges,

lawyers, and litigants, rather than a source of uncertainty, and unproductive and ever-increasing litigation.'" *Id.* (quoting *Garcia*, 471 U.S. at 275). Otherwise, the Court has reasoned, "the legislative purpose to create an effective remedy for the enforcement of federal civil rights [would be] obstructed by uncertainty in the applicable statute of limitations, for scarce resources [would] be dissipated by useless litigation on collateral matters." *Garcia*, 471 U.S. at 275.

Although the Supreme Court has not required national uniformity in the selection of the appropriate statute of limitations for Section 1983 claims, the Court has required "'uniformity within each State.'" *Varnell*, 756 F.3d at 1212 (quoting *Garcia*, 471 U.S. at 275). The Court has explained that the limitations period should not "depend upon the particular facts or the precise legal theory of [the] claim," *Garcia*, 471 U.S. at 274, and instead has determined that a state's best-fitting limitations period is that which applies to personal injury actions, *id.* at 280. The Court further has held that if "state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions." *Owens v. Okure*, 488 U.S. 234, 250 (1989)).

For Section 1983 claims arising in New Mexico, the Supreme Court has borrowed and applied the three-year limitations period from New Mexico's statute of limitations for personal injury claims. *Garcia*, 471 U.S. at 280; *Varnell*, 756 F.3d at 1212 (citing N.M. Stat. Ann. § 37-1-8) (additional citation omitted).[17] The DOH Defendants ignore the clear Supreme Court

---

[17]   New Mexico's statute of limitations for personal injury claims is set forth in New Mexico Statutes Annotated Section 37-1-8. N.M. Stat. Ann. § 37-1-8 (providing that "[a]ctions must be brought against sureties on official bonds and on bonds of guardians, conservators, personal representatives and persons acting in a fiduciary capacity, within two years after the liability of the principal or the person from whom they are sureties is finally established or determined by a judgment or decree of the court, and for an injury to the person or reputation of any person, within three years").

precedent holding that, for Section 1983 claims arising in New Mexico, the appropriate statute of limitations is three years. *Garcia*, 471 U.S. at 280; *see also Varnell*, 756 F.3d at 1212 (citing N.M. Stat. Ann. § 37-1-8) (additional citation omitted). Instead, the DOH Defendants advance the argument—unsupported by citation to any authority—that Plaintiffs' Section 1983 claims "f[a]ll within the scope of the Developmental Disabilities Code," and that, because the New Mexico legislature "intended that the Tort Claims Act statute of limitations, with no tolling provision for legal disability, would apply to individuals who f[a]ll within the scope of the Developmental Disabilities Code," the Tort Claims Act's statute of limitations applies to Plaintiffs' Section 1983 claims. [Doc. 292].

The DOH Defendants' argument lacks merit for two reasons. First, it is federal law that governs the selection of the appropriate statute of limitations for Section 1983 claims, and, under federal law, the intent of the New Mexico legislature does not govern the selection of the appropriate state statute of limitations to borrow for purposes of establishing the applicable limitations period for a Section 1983 claim. Rather, the Supreme Court has established the appropriate framework for determining the statute of limitations for a Section 1983 claim and the Supreme Court has determined that the best-fitting state limitations period is that which applies to personal injury actions. *Garcia*, 471 U.S. at 280. The Court further has indicated that, if state law provides multiple statutes of limitations for personal injury actions, a court should borrow the general or residual statute for personal injury actions. *Owens*, 488 U.S. at 250.

Applying this framework, the Supreme Court specifically has held that the appropriate limitations period for Section 1983 claims in New Mexico is three years. *Garcia*, 471 U.S. at 280. Thus, even if the New Mexico legislature purported to dictate, through an expression of its legislative intent, what state statute of limitations courts should borrow for purposes of limiting the

time during which a plaintiff may bring a Section 1983 suit, the New Mexico legislature's intent is neither relevant to, nor determinative of, the appropriate state statute of limitations to borrow for a Section 1983 claim.   *Compare Anaya v. Crossroads Managed Care Sys., Inc.*, 195 F.3d 584, 591 n.2 (10th Cir. 1999) ("[A] state statute does not and cannot define the scope of constitutional rights.").   Accordingly, the DOH Defendants' argument that the Court should apply the two-year statute of limitations in the Tort Claims Act to Plaintiffs' Section 1983 claims lacks merit.

Second, the DOH Defendants' argument also is flawed because, while the DOH Defendants characterize Plaintiffs' claims as falling within the scope of the Developmental Disabilities Code, this characterization is unsupported by the allegations of fact in the complaint. As stated above, Plaintiffs do not bring claims for violation of the Developmental Disabilities Code.   Rather, Plaintiffs assert federal constitutional claims pursuant to 42 U.S.C. Section 1983 against the DOH Defendants for violation of Plaintiffs' rights under the First, Fourth and Fourteenth Amendments.   [*Id.* ¶¶ 372-402].

While the DOH Defendants point out that Plaintiffs rely upon the Developmental Disabilities Code in support of their Section 1983 claims, Plaintiffs do so only to establish one element of their Section 1983 due process claims, and this reliance does not alter the underlying nature of Plaintiffs' claims as arising under Section 1983.   The Fourteenth Amendment's protections against state deprivation of life, liberty, or property without due process of law, *Ingraham v. Wright*, 430 U.S. 651, 672 (1977), apply only to the deprivation of interests encompassed by the Fourteenth Amendment's protection of liberty and property.   *Bd. of Regents of State Colleges v. Roth*, 408 U.S. 564, 569 (1972).   While the identification of the interests that are protected by the due process clause is a question of federal constitutional law, *Harper v. Young*, 64 F.3d 563, 566 (10th Cir. 1995), *aff'd*, 520 U.S. 143 (1997), property rights and liberty

53

interests are created by state law.   *Roth*, 408 U.S. at 577 ("Property interests . . . are not created by

the Constitution," but "[r]ather[] are created and their dimensions are defined by existing rules or

understandings that stem from an independent source such as state law—rules or understandings

that secure certain benefits and that support claims of entitlement to those benefits."); *see also*

*Wilkinson v. Austin*, 545 U.S. 209, 221 (2005) ("A liberty interest may arise from the Constitution

itself, by reason of guarantees implicit in the word 'liberty,' or it may arise from an expectation or

interest created by state laws or policies.") (citations omitted).   Consistent with these principles,

Plaintiffs properly rely upon the Developmental Disabilities Code to establish the existence of a

property right while they ultimately rely upon federal constitutional law to "determine[] whether

[the property] interest[ they allege] rises to the level of a legitimate claim of entitlement protected

by the Due Process Clause."   *Cleveland Bd. of Educ. v. Loudermill*, 470 U.S. 32, 541 (1985).[18]

Plaintiffs' reliance on state law for the purpose of establishing the existence of a property right

does not transform Plaintiffs' Section 1983 due process claim into one established by the state

Developmental Disabilities Code.   Thus, the DOH Defendants' argument that Plaintiffs assert

claims arising under the Developmental Disabilities Code lacks merit for this reason as well.

The allegations in the complaint establish that Plaintiffs seek relief pursuant to Section

1983 and not the Developmental Disabilities Code.   Pursuant to controlling Supreme Court

precedent, Plaintiffs' Section 1983 claim is subject to New Mexico's three-year general statute of

limitations for personal injury claims.   Thus, the Court rejects the DOH Defendants' contention

---

[18]     In its September 30, 2015, Memorandum Opinion and Order, the Court—like
Plaintiffs—relied upon the Developmental Disabilities Code to hold that, on the facts alleged,
Plaintiffs had a property interest in the benefits of involuntary civil commitment, but applied
federal law to conclude that that property interest alleged rose to the level of a legitimate claim of
entitlement protected by the Due Process Clause.   [Doc. 375 at 19 (holding that the
Developmental Disabilities Code in effect at the time of Plaintiffs' involuntary commitments
"plainly created" a property interest)].

that the two-year statute of limitations in the New Mexico Tort Claims Act applies.

The Court further holds that general principles of tolling govern Plaintiffs' claims and not the Tort Claims Act's specific prohibition on tolling. The Tenth Circuit has confirmed that "[o]nly generally applicable tolling provisions—such as those based on minority, incapacity, and equitable grounds—should be incorporated for use under § 1983," *Varnell*, 756 F.3d at 1213 (citing *Sain v. City of Bend*, 309 F.3d 1134, 1138 (9th Cir. 2002)), and not specific tolling prohibitions imported for claims against public officials under the New Mexico Tort Claims Act. The Tenth Circuit, quoting a Ninth Circuit decision, explained that "'[i]t would no less frustrate the federal interest in uniformity and the interest in having firmly defined, easily applied rules were we to obediently apply the residual statute of limitations, only to then adopt a tort-specific tolling provision,'" for "'[s]uch a holding would succeed only in transferring the confusion over the choice among multiple statutes of limitations to a choice among multiple tolling provisions.'" *Varnell*, 756 F.3d at 1213 (quoting *Bonneau v. Centennial Sch. Dist. No. 28J*, 666 F.3d 577, 580 (9th Cir. 2012)). Further, a Section 1983 claim is not analogous to a cause of action brought under the state's Tort Claims Act. "[T]ort claims acts are based on 'state concepts of sovereign immunity . . . alien to the purposes to be served by the Civil Rights Act.'" *Gunther v. Miller*, 498 F. Supp. 882 (D.N.M. 1980) (quoting *Donovan v. Reinbold*, 433 F.2d 738, 742 (9th Cir. 1970)).

For the foregoing reasons, the Court rejects the DOH Defendants' contention that Plaintiffs' Section 1983 claims are subject to the Tort Claims Act's two-year statute of limitations and to its prohibition on tolling. Because the sole ground on which the DOH Defendants move to dismiss Plaintiffs' Section 1983 claims is that the claims are barred by the Tort Claims Act's statute of limitations and its prohibition on tolling, the Court denies the DOH Defendants' motion to dismiss Plaintiffs' Section 1983 claims.

## **CONCLUSION**

IT THEREFORE IS ORDERED that the DOH Defendants' Motion to Dismiss Plaintiffs' Claims Under the Medicaid Act and Supporting Memorandum, [Doc. 215], is granted in part and denied in part, the DOH Defendants' Motion to Dismiss Plaintiffs' Rehabilitation Act and Americans With Disabilities Act Claims and Supporting Memorandum, [Doc. 216], is granted in part and denied in part, the DOH Defendants' Motion to Dismiss Plaintiffs' Claims Under the Tort Claims Act and Supporting Memorandum, [Doc. 217], is granted in part and denied in part, and the DOH Defendants' Motion and Memorandum In Support of Motion to Dismiss Plaintiffs' Federal Constitutional Claims and Claims Asserted Under the New Mexico Developmental Disabilities Code on the Basis of the Statute of Limitations, [Doc. 292], is denied.

Dated this 24th day of February, 2016.

_____
MARTHA VAZQUEZ
UNITED STATES DISTRICT JUDGE